## Richmond

ANTONIO JOHNSON

v.

COMMONWEALTH OF VIRGINIA

March 6, 1981.

Record No. 800475.

Present: Carrico, C.J., Harrison, Cochran, Poff,
Compton, and Thompson, JJ.*

---

\* Mr. Chief Justice I'Anson presided at the oral argument of this case but retired on January 31, 1981.

*Thomas J. Morris* (*Stephen J. Crum,* on brief), for appellant.
*Thomas D. Bagwell, Assistant Attorney General* (*Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

Antonio Johnson was tried upon three indictments charging attempted rape, statutory burglary, and abduction with intent to defile. He was convicted of assault and battery and his punishment fixed at twelve months and a $1,000 fine, of statutory burglary with intent to commit assault and battery and his punishment fixed at imprisonment

for three years, and of abduction with intent to deprive the prosecutrix of her personal liberty and his punishment fixed at imprisonment for eight years. The trial court set aside the assault and battery conviction upon the ground that the only "touching of the victim" involved was that necessary to constitute the "detention" and "seizing" alleged to support the charge of abduction. Johnson was sentenced on the abduction and burglary convictions in accordance with the jury verdicts. The defendant appealed these convictions alleging that (1) the evidence is insufficient to support his conviction of statutory burglary, (2) a mere seizure or detention does not constitute abduction, and (3) he was placed twice in jeopardy when the trial court allowed charges of attempted rape and abduction to go to the jury.

The evidence, for the purpose of this appeal, may be briefly summarized as follows. On May 11, 1979, Mrs. Nieves S. Michalek, age twenty, and her eight and one-half-month-old child were in her apartment at 873 South Greenbrier, Arlington, when she heard a knock at the door. Mrs. Michalek ignored the first knock but upon hearing a second knock she went to the door, opened it and saw Johnson standing outside. She asked him what he wanted, and he responded, "I want to fix the fuses." Mrs. Michalek said that nothing was wrong with the fuses. Johnson repeated his request and then asked, "Do you have some cold water?" Mrs. Michalek testified that she replied, "I will give you some cold water" and, leaving the door open "about one foot," she walked to the kitchen. After filling a glass with water, Mrs. Michalek turned her head and saw Johnson had followed her into the kitchen. She stated that she said, "Here is your cold water" twice, but Johnson made no response and grabbed Mrs. Michalek tightly from behind. Mrs. Michalek said she dropped the glass when Johnson grabbed her and she began screaming, "There is some guy trying to hurt me." She testified that her landlady, Mrs. Ann Peele, heard her and responded, "What is wrong up in there?" whereupon Johnson released Mrs. Michalek and walked rapidly out of the apartment.

Mrs. Michalek stated that while Johnson was holding her he attempted to kiss her and "started to rub his hips back and forth on my rear end . . . and my clothes started going up." She said she could feel that Johnson was sexually aroused. Mrs. Michalek estimated ten to fifteen minutes elapsed from the time Johnson first entered the apartment until he left. On cross-examination, Mrs. Michalek denied she invited Johnson into the apartment, stating, "I said, 'Stay there. I'll go get some water for you.' " She said the only thing Johnson said during the incident was "I didn't hurt [you]. I'm not going to hurt you." Mrs. Michalek estimated that Johnson held her for ten to fifteen seconds.

Ann Peele testified that she heard loud voices and screams from the Michalek apartment and heard Mrs. Michalek say, "No, don't, please stop." Johnson was initially detained by Mrs. Peele but left the scene while she phoned the police. Frank Winter, a prospective tenant, also heard screams from the Michalek apartment. He was present when Mrs. Peele temporarily detained the defendant and stated that he heard Johnson explain to Mrs. Peele that he was just the maintenance man and was not hurting Mrs. Michalek.

Officer William Turner testified that while he was interviewing Mrs. Michalek about the incident in her apartment, Johnson returned. Turner stated that Mrs. Michalek immediately identified Johnson as her assailant and that Johnson at that time remarked, "I only wanted to talk to you. . . Now look at me. I'm going to go to jail."

Johnson, who was nineteen years old, testified that on the morning of May 11, 1979, he was operating a car which bore an expired inspection sticker. Johnson stated that he entered the Greenbrier Apartment parking lot to avoid a police car which was behind him. Johnson further stated that after the police car had passed, he entered the front of the first apartment building and tapped twice on a door which was opened by Mrs. Michalek. Johnson asked her if someone named Larry lived there, and upon receiving a negative response he asked for a glass of water. He stated that when Mrs. Michalek responded, "Okay, come in" he walked approximately two feet into the apartment through the half-open door. Johnson said Mrs. Michalek disappeared from view and started "hollering", whereupon he left without touching her. He further testified that he saw Mrs. Peele as he was leaving and that he refused to wait for the police. Johnson stated that he returned to the apartment to explain the incident and was arrested. On cross-examination Johnson admitted he did not want the drink of water and that he was not "a maintenance man".

All conflicts in the testimony of the witnesses have been resolved by the jury's verdict. We therefore view the evidence in the light most favorable to the Commonwealth. The jury believed the testimony of Mrs. Michalek. She testified that she opened the door only about one foot, and thus the defendant had to push the door open additionally in order to enter the apartment. She also stated that she expressly told the defendant to remain outside when she went to get him a glass of water. The jury could have found from the evidence that to obtain entry into Mrs. Michalek's apartment the defendant first posed as a maintenance man sent to fix a fuse, and that when that ruse failed he asked for a glass of water which he admittedly did not want. Evidence of the assault and battery that he committed after gain-

ing admission to her apartment was provided by Mrs. Michalek's testimony.

The principles controlling our decision on the burglary assignment are well settled. In *Davis* v. *Commonwealth,* 132 Va. 521, 523, 110 S.E. 356, 357 (1922), it was held:

> Breaking, as an element of the crime of burglary, may be either actual or constructive. There is a constructive breaking when an entrance has been obtained by threat of violence, by fraud, or by conspiracy. Min. Syn. Cr. Law, page 92; *Clarke* v. *Commonwealth,* 25 Gratt. (66 Va.) 912. . . .
>
> Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime. See the authorities cited, *supra.* But a breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house.

*See also Williams* v. *Commonwealth,* 193 Va. 764, 71 S.E.2d 73 (1952); *Finch* v. *Commonwealth,* 55 Va. (14 Gratt.) 643 (1858).

Mrs. Michalek's testimony established both an actual and a constructive breaking and entering by the defendant. Thus, the evidence supports the defendant's conviction of breaking and entering the apartment of Mrs. Michalek with the intent to commit assault and battery. Code § 18.2-92.

■ We now turn to defendant's assignment of error which questions his conviction of abduction, an offense defined by Code §18.2-47, which stated, in pertinent part:

> **Abduction and kidnapping defined; punishment.**—Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction"; but the provisions of this section shall not apply to any law-enforcement officer in the performance of his duty. The terms "abduction" and "kidnapping" shall be synonymous in this Code.

Abduction generally, except by the parent of the person abducted,

is punishable as a Class 5 felony. Abduction of any person with the intent to defile is punishable as a Class 2 felony. Code § 18.2-48.

The indictment upon which the defendant was tried charged that he "by force, intimidation or deception, without legal justification or excuse did detain, take, transport or secrete the person of another, to wit: Nieves Michalek, with intent to defile such person."

The verdict returned by the jury found the defendant guilty of abduction with the intent to deprive the prosecutrix of her personal liberty. In *McKinley* v. *Commonwealth,* 217 Va. 1, 4, 225 S.E.2d 352, 353 (1976), we distinguished abduction with intent to deprive a person of his personal liberty from abduction with intent to defile:

> The specific intent entertained by an accused is the distinguishing feature of the two offenses. A defendant could abduct with intent to deprive a victim of personal liberty, without having any intention of defiling that person. The statutes have recognized that abduction with intent to extort money, or pecuniary benefit, abduction of any person with intent to defile such person and abduction of a female under sixteen years of age for purposes of concubinage or prostitution, are more serious offenses than abduction with intent only to deprive one of personal liberty. Further, the defense to be interposed would necessarily vary with the specific offense a defendant was charged with committing.

■ The defendant argues that the seizure and detention of Mrs. Michalek was fleeting and that no asportation occurred. He contends that asportation of the victim is a necessary element of the crime of abduction. Defendant supports this argument by a review of the authorities dealing with common law kidnapping, and by citing cases from various jurisdictions which have addressed this issue. *See People* v. *Daniels,* 71 Cal.2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897 (1969); *People* v. *Lombardi,* 20 N.Y.2d 266, 229 N.E.2d 206 (1967); *People* v. *Levy,* 15 N.Y.2d 159, 204 N.E.2d 842 (1965); *State* v. *Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979).

The Attorney General argues that in Virginia the common law has been superseded by statute and that here the defendant has been charged with a violation of Code § 18.2-48 and found guilty of the violation of Code § 18.2-47. The Commonwealth cites numerous cases from other jurisdictions holding that detention can constitute the crime of abduction and that a kidnapping can be committed by seizure and/ or detention, but relies principally on *Joyce* v. *Commonwealth,* 210 Va. 272, 170 S.E.2d 9 (1969).

The precise question posed by the defendant has never been decided

by this court. The crime of abduction was involved in *Turnbull* v. *Commonwealth,* 216 Va. 328, 218 S.E.2d 541 (1975); *Barnett* v. *Commonwealth,* 216 Va. 200, 217 S.E.2d 828 (1975); *Shook* v. *Commonwealth,* 212 Va. 36, 181 S.E.2d 632 (1971); *Chittum* v. *Commonwealth,* 211 Va. 12, 174 S.E.2d 779 (1970); and *Kent* v. *Commonwealth,* 165 Va. 840, 183 S.E. 177 (1936); but in each case an asportation of the victims was proved.

While there is language in *Joyce, supra* which supports the Attorney General's argument that detention without asportation is sufficient to support a conviction under Code § 18.2-47, the facts of the case explain the result. Joyce and a confederate escaped from jail and forced a state trooper to accompany them as they fled in his patrol car. After traveling approximately seven miles, Joyce broke and entered a dwelling house occupied by two elderly women. The two escapees and the trooper remained in the house for approximately twenty minutes, during which time the trooper and the women were moved into the kitchen of the dwelling. Joyce was subsequently charged with breaking and entering a dwelling in the daytime with intent to commit abduction and was convicted under a statute which is the forerunner of Code § 18.2-47. It must be considered that at the time Joyce broke and entered the dwelling he had abducted the trooper and needed a hideout to prevent the trooper and the women from leaving to spread an alarm. In *Joyce* an abduction was in progress, and the asportation of the trooper, and the breaking and entering, were all in furtherance of the escape and the abduction. Further, Joyce was charged with a crime which involved the *intent* to commit abduction, not that he had actually abducted the ladies. Thus, the fact that he had abducted the trooper and needed a hideout with no witnesses to indicate their presence would be evidence to sustain a jury finding that he broke and entered intending to asport these two women by duress if necessary.

Virginia's abduction statute specifically provides that the terms abduction and kidnapping shall be synonymous, and historically the crime of kidnapping envisions the asportation of a person under some compulsion, usually with complete control effected over the person. The defendant argues for a realistic interpretation of the abduction statute and contends that this court's acceptance of the Commonwealth's interpretation would result in the crime of abduction overlapping several other crimes. Defendant points out that in every case involving rape there is a seizure and some detention of the victim. Additionally, in cases of robbery, there usually is a detention of the victim and often a seizure. Likewise, assaults are seldom accomplished without some detention of the victim.

At some point, unless the General Assembly acts first, this court must decide whether the legislature, in enacting § 18.2-47, intended the mere seizure and detention of a victim without legal excuse, and unaccompanied by any asportation, to constitute the separate crime of abduction. However, the case under review is not a proper vehicle for such a decision.

■ Antonio Johnson, without legal justification or excuse, entered the apartment of Mrs. Michalek, seized her from behind, detained her temporarily and then, because of her screaming and resistance, released her and left the apartment. A jury found the evidence insufficient to convict him of attempted rape, and also insufficient to convict him of breaking and entering with the intent to defile the victim. We think it clear that Johnson entered the apartment with the intention of having sexual intercourse with the occupant and that the advances he made, however limited and fleeting, were designed to accomplish that purpose. However, his assault was frustrated by her resistance and stopped short of constituting an attempted rape. When Johnson put his arms around Mrs. Michalek and held her tightly this was done in furtherance of his sexual advances and not with the intent to deprive her of her personal liberty, although such a deprivation did occur momentarily. The defendant did commit an assault and battery on Mrs. Michalek, and his conviction of entering the apartment with the intent to commit that crime is affirmed. The evidence is not sufficient to sustain his conviction of abduction, *i.e.,* seizing and detaining Mrs. Michalek with intent to deprive her of her personal liberty.

■ There has been no violation of the defendant's rights under the double jeopardy clauses of the federal and state Constitutions, and his assignment of error alleging such a violation is without merit. All the convictions arose from a single trial. Defendant's conviction for assault and battery was set aside by the lower court, and his conviction for abduction is being voided here. The only conviction that remains is for statutory burglary under Code § 18.2-92. *See Turner* v. *Commonwealth,* 221 Va. 513, 273 S.E.2d 36 (1980); *Johnson* v. *Commonwealth,* 221 Va. 736, 273 S.E.2d 784 (1980).

Accordingly, the judgment of the lower court convicting the defendant of statutory burglary is affirmed. Its judgment convicting the defendant of abduction is reversed, and the indictment charging abduction is dismissed.

*Affirmed in part;*
*Reversed in part;*
*and final judgment.*