CIRCUIT COURT OF HENRICO COUNTY

Commonwealth of Virginia

v.

Anthony Joseph Bosoni

May 10, 1984

Cases No. 83F956-7, 83F960-61, 83F964-65

By JUDGE E. BALLARD BAKER

Anthony Joseph Bosoni was indicted on thirteen charges, all relating to activity on November 11 and 12, 1983. One charge was breaking and entering the dwelling home of W. D. Mothershead with intent to commit larceny on November 11. The other twelve charges were for abduction and robbery, with use of a firearm, of each three people inside the house.

This Court heard evidence on all charges on April 3, 1984, and found the defendant guilty of the breaking and entering charge, guilty of robbery and use of a firearm in robbery of Allen Jackson and W. D. Mothershead, guilty of larceny from Marsha Jackson and not guilty of the firearm in robbery charge of Marsha Jackson.

The abduction and firearm in abduction charges were taken under advisement, and this letter relates to those six charges.

The problem presented in the abduction cases is whether Allen Jackson, Marsha Jackson and W. D. Mothershead were seized, taken, transported or detained

with intent to deprive them of their personal liberty within the meaning of Virginia's abduction statute, § 18.2-47.

The evidence disclosed that Bosoni and another broke into the Mothershead home sometime after 7:00 p.m. on November 11. No one was present at the time. Around 10:15 p.m. Allen Jackson returned home. He entered the front door, took a few steps to his right towards the den and then heard a voice behind him command him to "Hold it." He was told to turn slowly and lie on the floor. This he did. He was searched, and car keys and wallet were removed. He was then forced to walk backwards from the den to the living room by a person behind him. These rooms are on the same floor, connected by a hall. In the living room he was made to lie down. After lying down, he was told to change his position on the floor. He was tied up and a pillow case placed over his head. He did not see, but felt a gun against his back as he was lying down in the den and as he was led down the hall. He was aware of two men in the house.

As he lay on the living room floor, Allen was asked questions about who else lived there, where were they, when would they return, was there a safe or any money in the house? The men remained in the house, with Allen on the floor.

At around 12:30 a.m. a car drove up, and shortly thereafter Marsha Jackson, Allen's mother, came through the front door. She went up the stairs to the second floor and, as she reached the top, Donald Mothershead, who had returned with her, entered the house. Marsha heard a commotion at the front door and heard Donald say, "Someone is in the house." Someone then came up the stairs with a gun and forced her to return to the first floor. She was led into the living room, told to lie down on the floor and was tied up with a pillow case over her head.

Donald Mothershead entered the house shortly after Marsha, turned to the right after he came in, heard a noise behind him and the command "Hit the

floor." He laid on the den floor about ten minutes and was then led into the living room and forced to lie down next to Marsha. He, like the others, was tied up and a pillow case placed over his head. His pockets were searched and wallet and keys taken from him. A bag of money he had brought with him as he came into the house and had thrown further into the den when he realized someone was in the house was found by the men. His wallet contained over $800.00; the bag $8,500.00.

Shortly after Marsha and Donald were tied up, the men left the house, taking Donald's car.

The three were then able to free themselves and called the police. This was around 1:00 a.m. or a few minutes thereafter.

Abduction is a statutory crime, § 18.2-47 reading as follows:

> Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction"; . . . The terms "abduction" and "kidnapping" shall be synonymous in this Code.

The question raised here was touched on, but not decided, in Johnson v. Commonwealth, 221 Va. 872. In that case, the Court made this comment:

> Virginia's abduction statute specifically provides that the terms abduction and kidnapping shall be synonymous, and historically the crime of kidnapping envisions the asportation of a person under some compulsion, usually with complete control effected over the person. The defendant argues for a

realistic interpretation of the abduction statute and contends that the Court's acceptance of the Commonwealth's interpretation would result in the crime of abduction overlapping several other crimes. Defendant points out that in every case involving rape there is a seizure and some detention of the victim. Additionally, in cases of robbery, there usually is a detention of the victim and often a seizure. Likewise, assaults are seldom accomplished without some detention of the victim.

At some point, unless the General Assembly acts first, this Court must decide whether the legislature, in enacting § 18.2-47, intended the mere seizure and detention of a victim without legal excuse, and unaccompanied by any asportation, to constitute the separate crime of abduction. However, the case under review is not a proper vehicle for such a decision. (221 Va. 878-9).

The Court went on to reverse a conviction of abduction with intent to deprive a person of personal liberty, pointing out that while the defendant did put his arms around the victim and

. . . held her tightly this was done in furtherance of his sexual advances and not with the intent to deprive her of her personal liberty, although such a deprivation did occur.

. . . The evidence is not sufficient to sustain the conviction of abduction, i.e., seizing and detaining Mrs. Michalek with intent to deprive her of her personal liberty. (221 Va. 879)

The Court referred to several Virginia abduction cases, but observed that in each case there was an asportation of the victim. The shortest asportation was two blocks in a motor vehicle. Barnett v. Common-

wealth, 216 Va. 200. Only in Joyce v. Commonwealth, 210 Va. 272, was seizure and detention in the home involved. Joyce, which was tried under what was then § 18.1-88, identical to the present abduction statute, was distinguished in Johnson, on the basis of its facts and the fact that the charge was for intent to abduct, not abduction. The victims in Joyce were detained in their own home for ten to twenty minutes and forced to move from one room to another. The Court, after commenting on Joyce in Johnson, went on to say that it must "At some point . . . decide whether the legislature . . . intended the mere seizure and detention of a victim . . . unaccompanied by any asportation, to constitute the separate crime of abduction . . ." It is apparent that Joyce has not decided whether seizure and detention in a house is abduction.

Based on what the Supreme Court said in Johnson, the question is whether § 18.2-47 requires an asportation, in addition to a seizure or detention.

Section 18.2-47 says that "abduction" and "kidnapping" are synonymous. At common law, abduction involved the interference with a family relationship or taking a child from its parent. Kidnapping was the abduction or stealing or carrying away of a person from his country. 1A M.J. Abduction, etc. sect. 1; 1 Am. Jur. 2d Abduction, etc. sect. 1. Whether making these terms synonymous adds something to abduction, as otherwise defined, or takes something away from common law kidnapping is uncertain.

Looking at cases from other jurisdictions leads to an Annotation at 43 A.L.R.2d, 699-714 on "Seizure or Detention for Purpose of Committing Rape, Robbery, or Similar Offense As Constituting Separate Crime of Kidnapping."

The text to the Annotation states:

The cases collected in the present annotation represent two general and opposing views. One view is that the seizure or detention of

the victim, with any accompanying movement, is necessarily sufficient to constitute the separate crime of kidnapping. The courts which have supported this view have reasoned that it was the fact of a forcible removal, and not the distance of the forcible removal, which constituted the separate crime of kidnapping. The other view, quite logically, is that the seizure or detention alone is not necessarily sufficient to constitute the separate crime of kidnapping. Here, the courts reasoned that movements merely incidental to the commission of a rape, robbery, or similar offense, and which did not substantially increase the risk of harm over and above that risk which was necessarily present in the rape, robbery, etc., did not constitute the separate crime of kidnapping. (43 A.L.R.3d 701)

While cases found in the Annotation involved statutes which differ from the one in Virginia, decisions in robbery cases finding sufficient seizure or detention within the confines of a building to be kidnapping are cited from Arizona, California, Connecticut, Georgia, Kansas, Massachusetts and North Carolina. Robbery cases holding seizure or detention within the confines of a building not sufficient to constitute the separate crime of kidnapping are cited from California, Florida and New York.

In People v. Adams, 205 N.W.2d 415, 59 A.L.R.3d 1288 (Michigan, 1973), the Michigan court discusses the California and New York rules and sets its own "Asportation Standard" in a prosecution for kidnapping. The Michigan court observes that both California and New York have departed from the any-movement rule and require something more significant before kidnapping can be added to the rape or robbery.

What the Virginia Supreme Court has said about § 18.2-47 and the statutory language are the controlling considerations here. Views from other jurisdictions are helpful, and this Court notes that some cases

cited in the above Annotation were also cited by the defense in Johnson.

The statutory words "seizes, takes . . . detains" are broad enough to include what Bosoni did with each of the victims here. However, Johnson, commenting on the fact that the abduction statute provides that the terms abduction and kidnapping shall be synonymous and that historically kidnapping involves asportation, raises the question whether "mere seizure and detention" are sufficient.

"Asportation" is defined as "a carrying away" in Webster's Third New International Dictionary. Neither of the three victims here were carried away. The women in Joyce were not carried away, but a conviction based on intent to commit abduction was upheld. However, in Johnson the Court pointed out that the evidence in Joyce was sufficient to support a finding that the defendant entered the house ". . . intending to asport these two women by duress if necessary." (221 Va. 878)

Based on this Court's reading of the statute and Johnson, a valid argument can be made that all three of these victims were abducted; a valid argument can be made that none were abducted.

If a person is forced to go from a home to any place outside that home, he is carried away. In this Court's view, that is clearly an asportation and the crime is abduction or kidnapping.

When a person is forced to go from one place in a house to another clearly there is no asportation in the sense of a person being carried away from the house, but the person is forcibly carried away from the place of his choice. To that extent, there is asportation.

This Court does not believe that every forced movement, or seizure and detention, of a person in a house is abduction under § 18.2-47. The forced movement, or seizure and detention, must be considered in

its relationship to any underlying offense. Is it merely incidental to the robbery? Does it substantially increase the risk of harm over and above that necessarily present in a robbery? What is the reason for the movement or seizure and detention?

The movement and seizure/detention of Allen Jackson was for over two hours, continuing long after the robbery from him was accomplished. Its purpose was to aid in the robbery planned when the others returned home. It did increase the risk of harm to Allen over and above that from his own robbery. What happened to Allen was an abduction.

As to W. D. Mothershead, he was led from one room to another, detained a few minutes and robbed. His movement and detention were indicental to his robbery and did not increase the risk of harm.

Marsha Jackson was forced to come down the steps and lie on the floor until the robbery of W. D. Mothershead was completed. She was not robbed, but was the victim of a larceny. Her pocketbook could have been taken without the other acts. However, her seizure/detention and movement was incidental to the robbery of Mothershead and did not clearly increase any risk of harm to her above that involved in his robbery. This will not be held to be an abduction.

When this defendant is returned to Court on June 19, 1984, for sentencing on the other charges, he will be found guilty of the abduction of Allen Jackson, and the related firearm charge, and not guilty of abduction of W. D. Mothershead and Marsha Jackson.