COURT OF APPEALS OF VIRGINIA

Present: Judges Baker, Coleman and Elder
Argued at Richmond, Virginia


DONNIE LEE BRUCE
                                        OPINION BY
v.        Record No. 0931-95-2    JUDGE LARRY G. ELDER
                                        APRIL 16, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge


            Denise Y. Lunsford (Michie, Hamlett, Lowry,
            Rasmussen & Tweel, P.C., on brief), for
            appellant.

            Monica S. McElyea, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.



        Donnie Lee Bruce (appellant) appeals his conviction for

breaking and entering his estranged wife's residence armed with a

deadly weapon, with the intent to commit assault, in violation of

Code § 18.2-91.[1]  Appellant contends that the evidence was

insufficient to prove the elements of the charge.  Disagreeing

with appellant, we affirm his conviction.

                              I.

                             FACTS

        Appellant and Deborah Bruce (Deborah), although married,

lived in separate residences during late 1993.  Deborah lived

_____

        [1]  Code § 18.2-91 states, "[I]f any person commits any of
the acts mentioned in § 18.2-90 with intent to commit larceny,
assault and battery or any felony other than murder, rape or
robbery, he shall be guilty of statutory burglary."

with the couple's son, Donnie Bruce, Jr. (Donnie) and Donnie's girlfriend at Greenfield Trailer Park in Albemarle County, Virginia. Although appellant stayed with Deborah at the residence during a period of time in September or October of 1993, his name was not on the lease, he was not given a key to the residence, and he did not have permission to enter the residence at the time of the alleged offense.

On December 5, 1993, at approximately 2:00 p.m., Deborah, Donnie, and Donnie's girlfriend left their residence. Earlier that morning, Donnie told appellant that Deborah would not be home that afternoon. Upon departing, Donnie and Deborah left the front door and front screen door closed but unlocked. The front door lacked a knob but had a handle which allowed the door to be pulled shut or pushed open.

After Deborah, Donnie, and Donnie's girlfriend left their residence, a witness observed appellant drive his truck into the front yard of the residence and enter through the front door without knocking. Appellant testified, however, that he parked his truck in the lot of a nearby supermarket and never parked in front of the residence. Appellant stated that the front screen door was open and that the front door was open three to four inches when he arrived. Appellant testified that he gently pushed the front door open to gain access and entered the residence to look for Donnie.

While preparing to leave the residence, appellant answered a

telephone call from a man with whom Deborah was having an affair. The conversation angered appellant, and he threw Deborah's telephone to the floor, breaking it. Appellant stated that he then exited through the residence's back door, leaving the door "standing open," and retrieved a .32 automatic gun from his truck, which was parked in the nearby supermarket parking lot. Appellant returned to the residence through the open back door. Appellant, who testified that he intended to shoot himself with the gun, went to Deborah's bedroom, lay on her bed, and drank liquor.

When Deborah, Donnie, and Donnie's girlfriend returned to their residence, appellant's truck was not parked in the front yard. Upon entering the residence, Donnie saw that someone was in the bathroom, with the door closed and the light on. When police arrived soon thereafter, they found appellant passed out on Deborah's bed and arrested him.

On May 24, 1994, a jury in the Circuit Court of Albemarle County convicted appellant of breaking and entering a residence, while armed with a deadly weapon, with the intent to commit assault. Appellant appealed to this Court.

## II.

### PROOF OF REQUISITE ELEMENTS

In order to convict appellant of the crime charged, the Commonwealth had to prove that appellant broke and entered into his wife's residence with the intent to assault her with a deadly

weapon.  Under the facts of this case, the Commonwealth satisfied this burden.

> Breaking, as an element of the crime of burglary, may be either actual or constructive. . . . <u>Actual breaking</u> involves the application of some force, slight though it may be, whereby the entrance is effected.  Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime.

<u>Bright v. Commonwealth</u>, 4 Va. App. 248, 252, 356 S.E.2d 443, 445 (1987)(quoting <u>Johnson v. Commonwealth</u>, 221 Va. 872, 876, 275 S.E.2d 592, 594-95 (1981))(emphasis added).  "Where entry is gained by threats, fraud or conspiracy, a <u>constructive breaking</u> is deemed to have occurred."  <u>Jones v. Commonwealth</u>, 3 Va. App. 295, 299, 349 S.E.2d 414, 416-17 (1986)(emphasis added).  "[A] breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an <u>entrance</u> contrary to the will of the occupier of the house."  <u>Johnson</u>, 221 Va. at 876, 275 S.E.2d at 595 (emphasis added).

Appellant's <u>initial entry</u> into Deborah's residence constituted an actual breaking and entering.  Sufficient credible evidence proved that appellant applied at least slight force to push open the front door and that he did so contrary to his wife's will.  However, as the Commonwealth concedes on brief, appellant did <u>not</u> possess the intent to assault his wife with a deadly weapon at this time.  The Commonwealth bears the burden of "proving beyond a reasonable doubt each and every constituent

-4-

element of a crime before an accused may stand convicted of that particular offense."  Martin v. Commonwealth, 13 Va. App. 524, 529, 414 S.E.2d 401, 403 (1992)(en banc)(citing Jackson v. Virginia, 443 U.S. 307, 315-16 (1979)).  The Commonwealth therefore had to prove appellant intended to assault his wife when he re-entered the residence with his gun.

We hold that the Commonwealth presented sufficient credible evidence to prove the crime charged.  On the issue of intent, the jury reasonably could have inferred that the phone call from Deborah's boyfriend angered appellant, resulting in his destruction of the telephone and the formation of an intent to commit an assault with a deadly weapon upon Deborah.  Viewed in the light most favorable to the Commonwealth, credible evidence proved that appellant exited the back door of the residence, leaving the door open, moved his truck to a nearby parking lot, and re-entered the residence carrying a gun with the intent to assault Deborah.

Well-established principles guide our analysis of whether appellant's exit and re-entry into the residence constituted an actual or constructive breaking.  As we stated above, an "[a]ctual breaking involves the application of some force, slight though it may be, whereby the entrance is effected."  Bright, 4 Va. App. at 252, 356 S.E.2d at 444 (quoting Johnson, 221 Va. at 876, 275 S.E.2d at 594)(emphasis added).  "In the criminal law as to housebreaking and burglary, [breaking] means the tearing away

or removal of any part of a house or of the locks, latches, or other fastenings intended to secure it, or otherwise exerting force to gain an entrance, with criminal intent . . . ." <u>Black's Law Dictionary</u> 189 (6th ed. 1990). Virginia, like most of our sister states, follows the view that "breaking out of a building after the commission of a crime therein is not burglary in the absence of a statute so declaring." 13 Am. Jur. 2d <u>Burglary</u> § 14, at 329 (1964)(footnote omitted).[2] In this case, appellant <u>exited</u> the back door of the residence on his way to retrieve the

[2] "This is true because a common-law burglary required the breaking to be for the purpose of effecting an entrance, and not for the purpose of escape. [One state has held], however, that under the common law it is burglary to break out after the commission of the felony, and that the precise order in which the acts are done is not material." 13 Am. Jur. 2d <u>Burglary</u> § 14, at 329 (1964)(citing <u>State v. Ward</u>, 43 Conn. 489 (1876)).

As one noted scholar writes:

> It was disputed whether one who gained entry without a breaking, but committed a breaking in order to leave, was guilty of burglary. The correct view was that of Hale, who explained that the burglary indictment charged "fregit intravit" (breaking and entering), so that "fregit & excivit" (breaking and leaving) would not suffice. This would also be in accord with the rationale for requiring a breaking as part of the offense. . . . In this country, courts have continued to follow the original distinction in defining what constitutes a sufficient breaking.

Wayne R. LaFave, <u>Handbook on Criminal Law</u> § 96, at 709 (1972) (citations omitted). <u>See also</u> Charles E. Torcia, <u>Wharton's Criminal Law</u> § 319, at 231 (1995)(stating that the American common law has not recognized the principle that a defendant who breaks out of a house is guilty of burglary).

gun from his truck.  In doing so, the appellant did not break for the purpose of escaping or leaving.  Rather, by opening the closed door, he broke in order to facilitate his re-entry.  At the time he committed the breaking, he did so with the intention of re-entering after retrieving his firearm.  Although appellant used no force to effect his re-entry into the residence, he used the force necessary to constitute a breaking by opening the closed door on his way out.  Even though no prior case involves facts similar to the instant case, the breaking and the entry need not be concomitant, so long as the intent to commit the substantive crime therein is concomitant with the breaking and entering.[3]

Sound reasoning supports the conclusion that a breaking from within in order to facilitate an entry for the purpose of committing a crime is sufficient to prove the breaking element of burglary.  The gravamen of the offense is breaking the close or the sanctity of the residence, which can be accomplished from within or without.  A breaking occurs when an accomplice opens a locked door from within to enable his cohorts to enter to commit a theft or by leaving a door or window open from within to facilitate a later entry to commit a crime.  Professor LaFave states, "if one gained admittance without a breaking but

---

[3] See Torcia, Wharton's Criminal Law § 321, at 247 ("The breaking and entering need not occur on the same night; the defendant may break on one night and enter on another night, so long as he enters through the opening made by his prior break.").

committed a breaking once inside, there could be no burglary unless there then was an entry through this breaking . . . [and] the entry may be separate in time from the breaking."  Wayne R. LaFave, Handbook on Criminal Law § 96, at 711 (1972).

Accordingly, a breaking occurred when appellant opened the back door of the victim's residence, even though the breaking was accomplished from within.  Thus, because the evidence was sufficient to prove an intent to commit assault at the time of the breaking and the entering, the Commonwealth proved the elements of the offense.  Thus, we affirm appellant's conviction.

Affirmed.