COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


VINCENT ARDIE OPIE

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2173-99-1          JUDGE SAM W. COLEMAN III
                                        AUGUST 29, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Randolph T. West, Judge

            Kenneth R. Yoffy (Cope, Olson & Yoffy,
            P.L.C., on brief), for appellant.

            Robert H. Anderson, III, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Vincent Ardie Opie was convicted in a bench trial of

robbery, abduction, and burglary while armed with a deadly

weapon.  On appeal, Opie argues that the evidence is

insufficient to support his conviction for burglary while armed

with a deadly weapon.  We disagree and affirm the conviction.

                            BACKGROUND

     "On review of a challenge to the sufficiency of the

evidence, we view the evidence in the light most favorable to

the Commonwealth, the prevailing party, and grant to it all

reasonable inferences fairly deducible therefrom."  Robertson v.

---

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Commonwealth, 31 Va. App. 814, 820, 525 S.E.2d 640, 643 (2000) (citing Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998)).  So viewed, the evidence proved that ninety-three-year-old Arthur Lomax was at his home in Newport News.  Lomax testified that, at approximately 11:00 a.m., shortly after his daughter left for work, Opie walked into his yard and onto his front porch where Lomax was sitting.  Opie, while brandishing a box-cutter, grabbed Lomax by the arm and "carried" him inside the house.  Opie asked Lomax for money and Lomax responded that he did not have any.  Lomax tried to leave, but Opie forced Lomax into the bedroom and tried to suffocate him with a pillow.  Opie then tied Lomax's hands behind his back and tied his feet with a lamp cord.  Opie, armed with the box-cutter, again demanded Lomax's money and Lomax told him that it was in a drawer. Opie took $200 and Lomax's watch.  Before he left, Opie again tried to suffocate Lomax with a pillow.  Lomax was unconscious when Opie finally left.

Although Lomax identified Opie as the intruder at trial, he was unable to identify him at the preliminary hearing.  Lomax, however, testified that the reason he was unable to identify Opie at the preliminary hearing was because defense counsel was blocking his view.

Opie testified that on the day of the incident, he was jogging in the victim's neighborhood and became tired.  He

admitted that he went to Lomax's house to use the phone to call his brother.  Opie testified that he left Lomax's house and began walking back to his home.  Opie encountered his nephew in a parking lot just before noon and the two left the area.  Opie admitted that he told Lomax's daughter, Inez Walker, that he needed to use the phone to secure a ride because his car had broken down and not because he was tired from jogging.

## ANALYSIS

Opie argues that the evidence is insufficient to support his burglary conviction because the Commonwealth failed to prove that there was a breaking, either actual or constructive, and failed to prove that he was armed with a deadly weapon at the time he gained entry into the residence.

"The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986) (citations omitted).

"Actual breaking involves the application of some force, slight though it may be, whereby the entrance is effected. Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime."  Davis v. Commonwealth, 132 Va. 521, 523, 110 S.E. 356, 357 (1922).  "Where entry is

- 3 -

gained by threats, fraud or conspiracy, a constructive breaking is deemed to have occurred." Jones v. Commonwealth, 3 Va. App. 295, 299, 349 S.E.2d 414, 416-17 (1986) (citations omitted). "'[A] breaking, either actual or constructive, to support a conviction of burglary, must have resulted in an entrance contrary to the will of the occupier of the house.'" Johnson v. Commonwealth, 221 Va. 872, 876, 275 S.E.2d 592, 595 (1981) (quoting Davis, 132 Va. at 523, 110 S.E. at 357).

Here, there was no evidence of an actual breaking. There was no evidence that any force, however slight, was used by Opie to gain entry into the dwelling. However, the evidence proved a constructive breaking. Lomax testified that Opie walked onto his porch, grabbed him by the arm, and while holding a box-cutter, forced Lomax inside the house. Lomax testified that he was "scared" and that "[he] couldn't do nothing about it." Accordingly, the evidence proves beyond a reasonable doubt that Opie gained entry into the residence by threat of violence to Lomax.

To elevate statutory burglary to a Class 2 felony, the Commonwealth had to prove that Opie was armed with a deadly weapon at the time of the entry. See Code § 18.2-90. The Supreme Court has stated that:

> A deadly weapon is one which is likely to
> produce death or great bodily injury from
> the manner in which it is used, and whether
> a weapon is to be regarded as deadly often

- 4 -

depends more on the manner in which it has been used than on its intrinsic character.

Pritchett v. Commonwealth, 219 Va. 927, 929, 252 S.E.2d 352, 353 (1979) (internal quotations and citations omitted). "[U]nless a weapon is per se a deadly one, the fact finder should determine whether it, and the manner of its use, place it in that category, and the burden of showing these things is upon the Commonwealth." Id. (citations omitted). We have stated that a box-cutter is "plainly 'a keen-edged cutting instrument.'" O'Banion v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (2000) (en banc). We further stated:

> [A box-cutter] is not materially different from a locked-blade knife, in that it has a retractable blade that can be locked into place. As such, by incorporating a razor blade, the box-cutter combines the fine-edged sharpness of a straight razor with the retracting capacity of a locked-blade knife.

Id. It is common knowledge that a box-cutter is an instrument with a sharp blade or razor that could be used as a weapon to kill or inflict serious injury on a person.

Here, Lomax testified that Opie held the box-cutter in his hand and displayed the box-cutter while grabbing Lomax and forcing him inside the residence. The evidence supported the finding by the trial judge as fact finder that the "keen-edged cutting instrument" used to threaten Lomax and to gain entry into the home was a deadly weapon.

Accordingly, we hold that the evidence is sufficient to support the conviction.

Affirmed.