COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Willis and
          Senior Judge Overton
Argued at Alexandria, Virginia


ASHLEY JEFFERSON GRISSETTE
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0409-00-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      JANUARY 23, 2001
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Donald M. Haddock, Judge

          J. Amy Dillard, Deputy Public Defender
          (Office of the Public Defender, on brief),
          for appellant.

          Shelly R. James, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Ashley Grissette (appellant) was convicted in a bench trial

of breaking and entering with the intent to commit larceny, in

violation of Code § 18.2-91 and petit larceny, in violation of

Code § 18.2-96.  On appeal, he contends (1) the trial court erred

in denying his motion to suppress out-of-court and in-court

identifications and (2) the evidence was insufficient to find him

guilty of the crimes charged.  We disagree and affirm his

convictions.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I. Background

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence established that on July 6, 1999, Gloria Burke-Vitalis (Vitalis) was working as a secretary in a second floor office on North Washington Street. Richard Martin (Martin) owned the only other office on the floor. Martin was away on vacation and had left a key with Vitalis so that she could collect his mail and place it in his office while he was away.

On July 6, 1999, Vitalis heard a loud thump in the hallway. She opened the office door and observed appellant, carrying a backpack, on his knees next to Martin's office doorway. Vitalis asked appellant why he was in the hallway. Appellant stated that he was a "personal injury client" of a lawyer with an office in the building. Appellant was not in fact a client of Vitalis' employer, the only attorney in the building. Vitalis told appellant that the attorney she worked for would be back later and asked appellant for his name. Appellant gave Vitalis a name, but not "Ashley Grissette." The conversation lasted between a minute and ninety seconds, and Vitalis returned to her office and called the building owner to check the hallway to see if appellant had left. Appellant was gone when the building owner arrived.

-

The next day, as Vitalis was taking Martin's mail to his office, she noticed that the transom window above Martin's office door was missing and that the door was unlocked. The window was found in Martin's office. Prior to being removed, the window was located above the office door, approximately seven feet off the ground at the bottom, extending another eighteen inches above the door. Appellant's fingerprint was found on the outside surface (the hallway side) of the window in the upper left-hand corner.

When Martin returned from vacation he discovered that several bottles of alcohol and four blank checks were missing from the office. Martin did not know appellant and had not given him permission to enter his office.

Detective Robert Hickman (Hickman), obtained a photo of appellant after his arrest. Hickman created a photo lineup by choosing photos that looked similar to appellant. He chose all African-American men of the same age, with similar head shape, hair and facial hair. None of the photographs depicted an extremely light-skinned man and four, including appellant, wore a white or light-colored t-shirt. Prior to showing her the photo spread, Hickman informed Vitalis that the person she observed in the hallway might not be present. Vitalis concentrated on two of the photos and concluded by choosing appellant. She had no doubt that appellant was the man she observed on July 6. Vitalis also identified appellant as the man she observed when she testified in court.

-

Prior to trial, appellant moved to suppress the out-of-court identification and any in-court identification as impermissibly suggestive because appellant was the darkest colored man in the lineup and was the only one wearing a white t-shirt.  The trial court denied appellant's motion finding that the lineup was not unduly suggestive, at least four of the individuals were "dark" and three wore white t-shirts.

## II.  Identification of Appellant

Appellant first contends that the out-of-court identification was inadmissible as unduly suggestive because appellant was the only dark-skinned black male wearing a white t-shirt.  "An out-of-court identification is admissible if either (1) the identification was not unduly suggestive; or (2) the procedure was unduly suggestive, but the identification was so reliable that there is no substantial likelihood of misidentification."  Charity v. Commonwealth, 24 Va. App. 258, 261, 482 S.E.2d 59, 60 (1997) (emphasis in original).  A valid photo lineup does not require "'that all the suspects or participants be alike in appearance and have the same description, as long as there is nothing to single out the accused from the rest.'"  Id. at 261-62, 482 S.E.2d at 60 (quoting Williamson v. Commonwealth, 211 Va. 57, 59, 175 S.E.2d 285, 287 (1970)).  In the instant case, the photo lineup is clearly neutral and includes six photos of individuals who possessed "similar hair, facial hair, obviously black males roughly the same age."  All six have a similar "shape of the

-

head."  At least four of the men are wearing t-shirts, four of which are light colored.  None of the men has exceptionally light-colored skin.

When Hickman presented the photo lineup to Vitalis he told her that "[j]ust because I [am] showing [you] the sheet of photographs [does not] necessarily mean that the person who did the crime [is] on that sheet."  Vitalis initially narrowed the choice to two men pictured in the photo sheet and then chose appellant after 10 seconds.  Based on the record before us, we cannot say that the out-of-court identification was unduly suggestive.

Appellant next contends that the in-court identification should have been suppressed because it was based upon the unduly suggestive out-of-court identification.  Since we hold that the out-of-court identification was admissible and not unduly suggestive, the trial court did not err in allowing the in-court identification of appellant.

### III.  Sufficiency

Appellant next contends that the evidence was insufficient to convict him of breaking and entering with the intent to commit larceny and petit larceny.  Appellant concedes that the Commonwealth established that a burglary took place and items were taken from Martin's office.  Thus the only issue is whether the evidence was sufficient to prove appellant was the criminal agent.  "The Commonwealth bears the burden of 'proving beyond a

-

reasonable doubt each and every constituent element of a crime before an accused may stand convicted of that particular offense.'"  Bruce v. Commonwealth, 22 Va. App. 264, 268, 469 S.E.2d 64, 67 (1996) (citation omitted).

> [Appellant's] fingerprint found at the scene
> of the crime may be sufficient under the
> circumstances to show [appellant] was there
> at some time, nevertheless in order to show
> defendant was the criminal agent, such
> evidence must be coupled with evidence of
> other circumstances tending to reasonably
> exclude the hypothesis that the print was
> impressed at a time other than that of the
> crime.  Such "other circumstances," . . .
> "need not be circumstances completely
> independent of the fingerprint, and may
> properly include circumstances such as the
> location of the print, the character of the
> place or premises where it was found and the
> accessibility of the general public to the
> object on which the print was impressed."
> Those attendant circumstances may
> demonstrate the accused was at the scene of
> the crime when it was committed.  And if
> such circumstances do so demonstrate, a
> rational inference arises that the accused
> was the criminal agent.

Tyler v. Commonwealth, 254 Va. 162, 166, 487 S.E.2d 221, 223 (1997) (second and third emphasis added) (quoting Turner v. Commonwealth, 218 Va. 141, 146-47, 235 S.E.2d 357, 360 (1977)).

In the instant case, Vitalis heard a thump in the hallway. Upon investigating the noise Vitalis observed appellant, on his hands and knees carrying a backpack, on the second floor of an office building which had only two offices on the floor.  After being confronted, appellant gave a fake name and claimed he was there to see a lawyer.  Appellant had no legitimate reason for

-

being on the second floor of the building, nor for being in the hallway outside of Martin's office. Appellant's fingerprint was found in the upper corner of an eighteen inch high transom window located almost eight feet high. The mode of entry into the office was through the same transom window. The height of the window indicates that it was not readily accessible to the general public passing by the office. It could be reached and touched only by "conscious and deliberate effort." The identification of appellant coupled with the fingerprint found on the transom window provides sufficient evidence to establish appellant as the criminal agent in the burglary and larceny. See Avent v. Commonwealth, 209 Va. 474, 480-81, 164 S.E.2d 655, 659-60 (1968). Accordingly, the judgment of the trial court is affirmed.

Affirmed.

-