COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


COLIN ANTONIO ELLIS, S/K/A
  COLLIN ANTONIO ELLIS
                                              MEMORANDUM OPINION[*] BY
v.      Record No. 2700-10-2                 JUDGE LARRY G. ELDER
                                                MARCH 27, 2012
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
                          Timothy K. Sanner, Judge

            W. Edward Riley, IV (Chad A. Logan; David M. Branch; Riley &
            Wells, on brief), for appellant.

            Josephine F. Whalen, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Colin Antonio Ellis (appellant) challenges the sufficiency of the evidence supporting his

bench trial conviction for abduction with intent to defile in violation of Code § 18.2-48. He

argues (1) the act of touching and holding the victim was legally insufficient as a matter of law to

support a finding that he abducted the victim; and (2) his interactions with the victim were

insufficient to support a finding that he possessed the requisite intent to defile. Because

appellant's restraint of the victim constituted a detention for purposes of Code § 18.2-48, and the

circumstantial evidence supports a finding that appellant detained the victim with intent to defile

her, we affirm his conviction.

––––––––––––––––––––

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

ANALYSIS

When the sufficiency of the evidence is challenged on appeal, we "must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom." Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993). "'The judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Wilkins v. Commonwealth, 18 Va. App. 293, 295, 443 S.E.2d 440, 442 (1994) (en banc) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "The weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

A reviewing court does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (en banc) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979)), aff'd, 272 Va. 481, 634 S.E.2d 305 (2006). Instead, we ask only whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Prieto v. Commonwealth, 278 Va. 366, 401, 682 S.E.2d 910, 928 (2009) (quoting Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008)).

Code § 18.2-48 states in relevant part, "[a]bduction . . . of any person with intent to defile such person . . . shall be a Class 2 felony." "The crime incorporates the charge of abduction under Code § 18.2-47(A)," Crawford v. Commonwealth, 281 Va. 84, 102, 704 S.E.2d 107, 118 (2011), which states "[a]ny person who, by force, intimidation or deception, and without legal

justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty . . . shall be guilty of 'abduction.'" Appellant contends the evidence was insufficient to support the trial court's findings that 1) he abducted the victim within the meaning of Code § 18.2-47, and 2) he possessed the requisite intent to defile the victim. We hold the evidence is sufficient to support appellant's conviction.

A.

ABDUCTION

Appellant argues the second touching of the victim, although sufficient to constitute a battery, does not rise to the level of abduction. He contends the physical restraint was incidental to his other actions and therefore did not constitute a separate and distinct crime. Further, appellant cautions that affirming his conviction would enable the prosecution of any "unwanted sexual advance [that] proceeds to a brief physical interaction in which the victim is held momentarily before the defendant abandons his pursuit."

"[T]he physical detention of a person, with intent to deprive [her] of [her] personal liberty, by force, intimidation, or deception, without any asportation of the victim from one place to another, is sufficient" to sustain a finding that the accused's actions constituted an abduction. Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984). Code § 18.2-47 "casts its several prohibited acts in the disjunctive, [and therefore,] each is independently sufficient to support a conviction." Id. Thus, the statute makes a mere deprivation of the victim's liberty by use of force sufficient to establish an abduction. See Simms v. Commonwealth, 2 Va. App. 614, 618, 346 S.E.2d 734, 736 (1986).

Here, the evidence is sufficient to support the trial court's finding that appellant abducted the victim, Alice Ford, within the meaning of Code § 18.2-48. Ford was working alone at a convenience store at 3:30 a.m. when she encountered appellant standing in the rear hallway near

the restrooms. Ford, who had entered the hallway from the kitchen area, was startled by appellant's presence, but returned to the register kiosk in the front of the store.

When appellant left the bathroom area, he approached the front of the store and stepped inside the kiosk where Ford was stationed. Appellant, who had no prior association with the victim, hugged Ford and apologized for having startled her.[1] Although Ford told appellant he could not remain in the kiosk area, appellant ignored her and leaned against the counter next to the register. Ford again advised appellant he could not remain in the register area. On this occasion, appellant stepped outside the register area, but remained near the counter. Appellant then asked Ford to accompany him to the back of the store to "mess around." Ford answered, "No," and told appellant she was married. Appellant asked her again to come to the back of the store and noted no one would know.

When Ford refused a second time, appellant asked for another hug, which Ford also refused. Despite that refusal, appellant approached Ford and hugged her. As Ford attempted to step away, he held her tighter. Ford told appellant to release her, but as she tried to pull away, he grabbed her by both wrists. The surveillance camera footage shows Ford freeing one hand and grabbing the counter in an attempt to prevent appellant from pulling her into the back of the store. Ford's body was tilted at a forty-five degree angle away from appellant as she leveraged her left leg to pull herself back into the kiosk. Although this second physical encounter lasted approximately twenty seconds, the surveillance footage plainly demonstrates Ford actively resisted appellant's efforts throughout the physical contact.

Appellant's obvious attempts to free herself from appellant's grasp and her body position belie appellant's characterization of his actions as a "prolonged unwanted hug." Indeed, this

---

[1] Ford stated that the reason she originally allowed appellant to hug her was because she was trained to diffuse potentially volatile situations with angry customers.

case stands in stark contrast to possible innocuous situations involving unwanted physical contact because appellant's acts were clearly intended to "deprive [Ford] of [her] personal liberty."  Code § 18.2-47.

Further, appellant's reliance on the "incidental detention doctrine" is without merit.  This doctrine states

> that one accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

Brown v. Commonwealth, 230 Va. 310, 314, 337 S.E.2d 711, 713-14 (1985).  However, the Supreme Court of Virginia later clarified that the incidental detention doctrine "only applies when a defendant is convicted of two or more crimes arising out of the same factual episode."  Walker v. Commonwealth, 272 Va. 511, 516, 636 S.E.2d 476, 479 (2006); see also Clanton v. Commonwealth, 53 Va. App. 561, 571 n.10, 673 S.E.2d 904, 909 n.10 (2009) (rejecting the defendant's reliance on the incidental detention doctrine in regard to his conviction for abduction of an infant because the defendant "was not charged with attempted robbery of the infant or any other crime involving restraint of the infant").  "Since [appellant] was only convicted of one crime, abduction [with intent to defile], the incidental detention doctrine has no application."  Walker, 272 Va. at 516, 636 S.E.2d at 479.

B.

INTENT TO DEFILE

Appellant's argument that the evidence is insufficient to support a finding that he possessed the requisite intent to defile Ford takes two forms.  First, he contends the trial court, in essence, applied an overly-broad definition of "intent to defile," which appellant interprets to mean an "inten[t] to commit a sexually violent offense" and not an "intent to commit a mere

sexual battery." Second, appellant contends the evidence supports his hypothesis that he merely desired to engage in consensual sexual activity with Ford.

Turning to appellant's first argument, he contends the phrase "intent to defile" means an intent to commit a sexually violent offense. According to appellant, equating "sexually molest" with "defile" is only permissible in the presence of other nonsexual factors such as mutilation. Appellant contends that recent decisions have broadened the definition of "sexually molest" to any "sexual contact" irrespective of the actual intent of the accused. Appellant reasons that "[e]xpanding 'intent to defile' to include any mere intent to commit simple sexual battery, such as a[n] unwanted fondling . . . contravenes the intent of the Legislature to reserve the harsh punishment of a class 2 felony for extremely offensive acts." We disagree.

The Virginia courts have consistently held that the terms "defile" and "sexually molest" "are interchangeable within the meaning of [Code § 18.2-48]." Fitzgerald v. Commonwealth, 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982); see Crawford, 281 Va. at 103, 704 S.E.2d at 118-19; Wilson v. Commonwealth, 249 Va. 95, 103-04, 452 S.E.2d 669, 675 (1995); Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994). The Supreme Court has noted "that older definitions of defilement are susceptible of several meanings, but since the modern legal meaning seems restricted to sexual relations," the term "'sexually molest'" operates "as the functional equivalent of 'defile.'" Fitzgerald, 223 Va. at 632, 292 S.E.2d at 808 (citation omitted).

In light of this controlling precedent, appellant's argument that "sexually molest" impermissibly broadens the term "defile" lacks merit. The General Assembly has not amended Code § 18.2-48 since Fitzgerald, and we will adhere to the principle that "[s]exual molestation, while including sexual intercourse, also embraces many acts which are distinct from sexual intercourse." Simms, 2 Va. App. at 617, 346 S.E.2d at 735.

Appellant next argues the evidence proves, at most, that he used force to try to persuade Ford to engage in a consensual sexual act and that no evidence in the record supports a finding that he would have continued against Ford's will. Again, we disagree.

To prove appellant abducted the victim with the intent to defile her, the evidence must show that he abducted her with the specific intent to sexually molest her. Id. "'Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case.'" Hughes, 18 Va. App. at 519, 446 S.E.2d at 457 (quoting David v. Commonwealth, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986)). The state of mind of an accused may be shown by his conduct and by his statements. Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). "Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent, the intent element is established." Wilson, 249 Va. at 101, 452 S.E.2d at 674. "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided [the evidence as a whole] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "Circumstantial evidence is not viewed in isolation." Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Id. (quoting Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991)).

Here, appellant approached Ford at 3:30 a.m. after quarreling with his girlfriend. The convenience store was deserted except for appellant and Ford. Appellant followed Ford to the kiosk station and ignored her requests to leave the register area. Ford consistently refused appellant's numerous requests to engage in consensual sexual relations. Appellant then

"embraced" Ford, and grabbed her by her wrists as she attempted to pull away. Ford was able to hold her ground only be grabbing the counter with her free hand and bracing herself at an angle. Appellant did not release Ford until he saw another vehicle approach the store. Upon his arrest, appellant admitted that he had been to the convenience store earlier and that he "had been having troubles" with his girlfriend and was "trying to get payback." Appellant acknowledged he had "grabbed" Ford and was attempting to "do 'stuff' with him [sic]." Appellant explained "'stuff' referred to sexual acts." When viewed together, this circumstantial evidence compels the rejection of appellant's hypothesis that he restrained Ford with the intent merely to have consensual sexual relations with her.

Appellant attempts to analogize his case to Johnson v. Commonwealth, 221 Va. 872, 275 S.E.2d 592 (1981). In that case, the defendant's conviction of abduction was reversed where his acts of restraint were "done in furtherance of his sexual advances and not with the intent to deprive [the victim] of her personal liberty." Id. at 879, 275 S.E.2d at 597. The defendant followed the victim into her kitchen after knocking on her door. He grabbed the victim from behind, attempted to kiss her, and rubbed his hips against her buttocks. When the victim's landlady responded to her cries for help, the defendant released the victim and walked rapidly out of the apartment. The Court held that the defendant clearly "entered the apartment with the intention of having sexual intercourse with the [victim] and that the advances he made, however limited and fleeting, were designed to accomplish that purpose. However, his assault was frustrated by her resistance and stopped short of constituting an attempted rape." Id. at 879, 275 S.E.2d at 596-97. On those facts, the evidence did not prove the defendant acted with the separate intent to deprive the victim of her personal liberty with the intent to defile.

This case is distinguishable from Johnson in several important aspects. First, in Johnson, the detention and the conduct suggesting an intent to engage in sexual relations occurred

simultaneously. Here, by contrast, appellant restrained Ford *after* she refused his multiple requests to engage in sexual relations. The reasonable inference from this sequence of events is that after Ford rejected appellant's overtures to engage in consensual sexual relations, appellant sought to force his lascivious desires on her irrespective of whether she consented. In addition, the defendant in Johnson merely grabbed the victim from behind and made no effort to transport her to another location. Here, the surveillance footage plainly demonstrates appellant's active attempt to remove Ford from the kiosk. Given appellant's prior statement that he wanted to "mess around" with Ford in the back room, the reasonable inference from appellant's acts is that he was attempting to take Ford to a more secluded area of the convenience store so that he might carry out his lascivious desire by force. Finally, appellant admitted to the arresting officer that he had been having troubles with his girlfriend and was "trying to get payback" by engaging in sexual relations with someone else.

The trial court properly considered these statements as evidence that appellant had lascivious intent when he encountered Ford. See Hughes, 18 Va. App. at 524, 446 S.E.2d at 460 (noting that the defendant's numerous sexually-charged statements and acts prior to his abduction of the victim demonstrated he "had a sexual motive that evening as opposed to any other motive"). Although a mere desire to have sex does not necessarily suggest an intent to defile, appellant's specific use of force in this case provides the additional evidence necessary to support a finding that he acted with an intent to defile.

II.

CONCLUSION

Appellant's attempt to remove Ford from the kiosk is legally sufficient to constitute a detention, and thus an abduction, for the purposes of Code § 18.2-47. Because appellant was convicted of only abduction with intent to defile, the incidental detention doctrine does not

apply. Further, the circumstantial evidence is sufficient to support the trial court's finding that appellant abducted Ford with the intent to defile her. For these reasons, appellant's conviction for abduction with intent to defile is affirmed.

<u>Affirmed.</u>