PRESENT: Hassell, C.J., Lacy, Keenan, Lemons, Koontz, and Agee, JJ., and Stephenson, S.J.

DWAYNE LAMONT JOHNSON

v. Record No. 060363    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                           March 2, 2007
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal arises from the Court of Appeals' dismissal of a petition for a writ of actual innocence based on non-biological evidence, in which a petitioner sought relief based on recantation evidence provided by a co-defendant who had given contrary testimony at the petitioner's trial. We consider various issues related to the Court of Appeals' consideration of the petition under the provisions of Code §§ 19.2-327.10 through -327.14.

In September 2001, Dwayne Lamont Johnson (Johnson) was tried by a jury in the Circuit Court of New Kent County for capital murder for hire of Hope Sabrina Johnson (Hope), Johnson's wife, in violation of Code § 18.2-31, and for conspiracy to commit capital murder for hire, in violation of Code § 18.2-22. Johnson was convicted of both charges and, in accordance with the jury verdict, was sentenced to serve a term of life imprisonment for capital murder, and a term of 20 years' imprisonment for conspiracy to commit capital murder.

1

At Johnson's trial, the Commonwealth presented the testimony of Brandon L. Smith, who admitted that he was present when Hope was murdered. Because of his involvement in Hope's murder, Smith earlier had entered into a plea agreement in which the Commonwealth agreed to seek a lesser sentence in return for Smith's testimony implicating Johnson in the murder.

Smith testified at Johnson's trial that Johnson asked Smith to kill Hope or to find someone to kill her. According to Smith, Johnson stated that he would "give his next paycheck" to any person willing to kill Hope. Smith maintained that he refused the offer but told Johnson that Henry K. Barnes might agree to kill Hope.

On the night of Hope's murder, another acquaintance, Lloyd M. Allen, drove Smith and Barnes to Hope's house. Smith admitted that he entered Hope's house with Barnes after they cut the telephone line to the house. Allen testified that Barnes returned to the car without Smith, and that Allen and Barnes heard gunfire while waiting for Smith to return to the vehicle.

Hope was shot three times, including once in the back of her head. Allen later assisted the police in finding the murder weapon.

In November 2001, several weeks after Johnson's trial, Smith wrote a statement recanting the testimony he gave at Johnson's trial. In his recantation, Smith asserted that he had

2

not discussed with Johnson any plan to kill Hope, and claimed that he had testified falsely at Johnson's trial in order to receive a less severe sentence for his own involvement in the homicide.

Johnson appealed from his conviction to the Court of Appeals, which denied his petition. Johnson v. Commonwealth, Record No. 2739-01-2 (May 15, 2002.) This Court also refused Johnson's petition for appeal.[1] Johnson v. Commonwealth, Record No. 022521 (March 17, 2003).

In February 2005, Johnson filed a petition in the Court of Appeals for a writ of actual innocence based on non-biological evidence under the provisions of Code §§ 19.2-327.10 through –327.14. Johnson relied on Smith's recantation in support of his claim of innocence. The Court of Appeals determined that it required additional facts before it could reach a decision on Johnson's petition, and accordingly certified the following issues to the circuit court:

1. Is Brandon Smith credible in his assertion that he testified falsely during the trial of petitioner?

---

[1] Johnson did not address Smith's recantation testimony in either direct appeal. Johnson also sought a writ of habeas corpus from this Court on May 7, 2003. This Court denied Johnson's petition, holding that Johnson was not prejudiced by counsel's failure to seek a new trial because Smith's affidavit would have been insufficient to secure Johnson a new trial. Johnson v. Dir. Of Dep't of Corrections, Record No. 031292 (December 22, 2003).

3

2. If the answer to #1 is "Yes," did Brandon Smith testify falsely as to any material fact with respect to the offense(s) with which petitioner was charged?

3. If the answer to #1 is "Yes," were either petitioner or his trial counsel aware that Brandon Smith claimed that his trial testimony was false prior to the expiration of the 21 days following the entry of petitioner's final order of conviction?

4. If the answer to #2 above is "Yes," and the answer to #3 above is "No," with the exercise of reasonable diligence, could Smith's assertion that his trial testimony was false have been discovered by petitioner or his trial counsel before the expiration of 21 days following the entry of petitioner's final order of conviction?

The circuit court conducted an evidentiary hearing. At the hearing, Smith testified that he had lied to the police in stating that Johnson had been involved in Hope's murder, and had lied in giving similar testimony at Johnson's trial.[2] When asked to explain his inconsistent testimony regarding his own participation in Hope's murder, Smith stated that his attorneys had told him that he would receive a reduced sentence at his own trial if he testified against Johnson, and that Smith implicated Johnson because the police officers who arrested Smith had threatened to seek the death penalty in his case. Smith was unable to explain why he allegedly had testified falsely with respect to several details surrounding Hope's murder.

---

[2] Additionally, Smith recanted his trial testimony in a letter filed in the circuit court on November 21, 2001 and an affidavit sworn on February 25, 2003.

4

In its certified findings of fact, the circuit court stated that Smith's testimony was "neither logical nor believable, and at times he was evasive." The circuit court concluded that Smith was "not credible in his assertion that he testified falsely during the trial of Dwayne Johnson."

The Court of Appeals relied on the circuit court's factual findings, along with the evidence presented at Johnson's trial, and concluded that Smith's recantation testimony was not credible. Accordingly, the Court of Appeals dismissed Johnson's petition, holding that the evidence was insufficient to support the granting of a writ of actual innocence based on non-biological evidence. Johnson appeals from the Court of Appeals' dismissal of his petition.

We apply the standard of review set forth in Carpitcher v. Commonwealth, 273 Va. ___, ___ S.E.2d ___ (2007) (this day decided), in which we considered an appeal from the Court of Appeals' dismissal of a petition for a writ of actual innocence based on non-biological evidence. We held that in an appeal from the Court of Appeals' dismissal of such a petition, we will review de novo the Court of Appeals' conclusions of law and its conclusions based on mixed questions of law and fact. Id. at ___, ___S.E.2d at ___. However, when the Court of Appeals has referred issues in the case to a circuit court for factual findings under the provisions of Code § 19.2-327.12 and the

5

Court of Appeals has approved those findings, we will be bound by the factual findings unless they are plainly wrong or without evidence to support them. 273 Va. at ___, ___ S.E.2d at ___.

Johnson first argues that the Court of Appeals erroneously added a credibility requirement to the statutes governing writs of actual innocence based on non-biological evidence. He contends that the Court of Appeals, in the absence of any statutory authority, required that he establish the credibility of Smith's recantation in addition to proving that the recantation evidence was "material" within the meaning of Code § 19.2-327.11(A)(vii). According to Johnson, Code § 19.2-327.12 does not permit the Court of Appeals to require that the circuit court make such a credibility determination. We disagree with Johnson's arguments.

To obtain a writ of actual innocence based on non-biological evidence under Code §§ 19.2-327.10- through –327.14, a petitioner must allege and prove, among other things, that the newly-discovered evidence:

(1) "was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court;" Code § 19.2-327.11(A)(iv);

(2) "is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction by the court;" Code § 19.2-327.11(A)(vi);

6

(3) "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt;" Code § 19.2-327.11(A)(vii); and

(4) "is not merely cumulative, corroborative or collateral." Code § 19.2-327.11(A)(viii).

The petitioner bears the burden of proving these four elements by clear and convincing evidence. Code § 19.2-327.13.

The provisions of Code § 19.2-327.12 detail the Court of Appeals' authority to refer factual issues to a circuit court:

"If the Court of Appeals determines . . . that a resolution of the case requires further development of the facts, the court may order the circuit court in which the order of conviction was originally entered to conduct a hearing . . . to certify findings of fact with respect to such issues as the Court of Appeals shall direct."

As we explained in Carpitcher, evidence alleged in support of a petition for a writ of actual innocence based on non-biological evidence must be true to be found "material" under Code § 19.2-327.11(A)(vii). 273 Va. at ___, ___ S.E.2d at ___. Because the Court of Appeals cannot hold its own evidentiary hearing to assess a witness' credibility, but must ultimately determine whether a recantation is true, Code § 19.2-327.12 provides a mechanism to assist the Court of Appeals in this task.

The language of Code § 19.2-327.12, which authorizes the Court of Appeals to enter such orders of referral to the circuit court, is plain and unambiguous. Therefore, we apply the

7

statutory language as written.  See 1924 Leonard Road, L.L.C. v. Van Roekel, 272 Va. 543, 553, 636 S.E.2d 378, 384 (2006); Alcoy v. Valley Nursing Homes, Inc., 272 Va. 37, 41, 630 S.E.2d 301, 303 (2006); Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003).

Code § 19.2-327.12 gives the Court of Appeals broad discretion to certify to the circuit court issues of fact that must be resolved before deciding the merits of a petition.  The statute does not place any restrictions on the subject matter of such referral orders.

In the present case, Johnson's petition was based on the recantation of his co-defendant, Smith.  In order to resolve the merits of the petition, the Court of Appeals was required to determine whether Smith's recantation was true for purposes of meeting the materiality requirement of Code § 19.2-327.11(A)(vii).  See Carpitcher, 273 at ___, ___ S.E.2d at ___.  This determination depended, in large part, on whether Smith was credible in his assertion that he had lied at Johnson's trial and was now telling the truth that Johnson had no role in the murder.

This kind of inquiry plainly falls within the scope of authority given the Court of Appeals under Code § 19.2-327.12.  We hold that the Court of Appeals did not add a credibility

8

requirement to the statute but properly exercised its discretion in directing the circuit court to conduct an evidentiary hearing and to render factual findings on the issue of Smith's credibility.

Johnson further argues, however, that the Court of Appeals erred in concluding that Smith's recantation testimony was incredible without first weighing the credibility of that recantation testimony against his trial testimony or "weighing motivation and bias in deciding which of two inconsistent stories should be entitled to more weight." Johnson asserts that unless the circuit court conducts such a weighing process, recantation testimony will be "automatically removed" from consideration as newly-discovered evidence supporting the award of a writ of actual innocence based on non-biological evidence. He also contends that the Court of Appeals should have based its credibility determination solely on Smith's recantation testimony regarding Johnson's involvement in the murder, and should not have considered Smith's additional testimony denying his own participation in the murder. We disagree with Johnson's arguments.

There is no mandatory formula for a circuit court's consideration of the credibility of a particular witness. As the trier of fact, the circuit court is charged with the responsibility of considering various factors, including the

witness' demeanor, his opportunity for knowing the things about which he has testified, his bias, and any prior inconsistent statements relating to the subject of his present testimony. See Grubb v. Grubb, 272 Va. 45, 54-55, 630 S.E.2d 746, 752 (2006); Cherrix v. Commonwealth, 257 Va. 292, 301, 513 S.E.2d 642, 648 (1999); Langman v. Alumni Ass'n of Univ. of Va., 247 Va. 491, 504, 442 S.E.2d 669, 677 (1994); Burket v. Commonwealth, 248 Va. 596, 614-15, 450 S.E.2d 124, 134 (1994). In addition, the circumstances of a particular case may raise other factors that the circuit court deems relevant in assessing a witness' credibility.

Here, the circuit court's certified findings of fact show that the circuit court made a thorough assessment of Smith's credibility. The circuit court considered the substance of Smith's recantation testimony, his explanation of other matters including his own participation in the crime, his demeanor and apparent attitude as a witness, his prior inconsistent statements concerning the events surrounding the murder, and his explanation regarding why he allegedly had lied in testifying about these events on at least seven prior occasions but was now telling the truth.

Contrary to Johnson's contention, the circuit court was not required to limit its consideration to Smith's recantation testimony and his prior trial testimony about Johnson's

10

participation in the murder.  In assessing Smith's opportunity for knowing the things about which he testified, Smith's own participation in the murder was a highly relevant consideration. Moreover, under the broad scope of the Court of Appeals' order, the circuit court had the discretion to consider any matters relevant to the issue whether Smith's recantation was credible. Therefore, we hold that the circuit court did not abuse its discretion in the manner in which the court weighed the evidence and evaluated the credibility of Smith's recantation testimony.

Finally, Johnson argues that the Court of Appeals acted arbitrarily and capriciously in the present case in referring different subjects to the circuit court than those referred in Carpitcher.  Johnson maintains that while the Court of Appeals required him to establish in the circuit court that his recantation evidence was "credible," the Court of Appeals assigned a less difficult burden to the petitioner in Carpitcher, namely, that of establishing that the victim recanted her trial testimony in a material respect and that her recantation was not the product of duress.

We find no merit in this argument because it reflects a misperception of the statutory scheme.  In referring certain factual issues to a circuit court under Code § 19.2-327.12, the Court of Appeals directs the circuit court to make factual findings with regard to those issues.  The petitioner is not

11

assigned any burden of proof with regard to the proceedings in the circuit court but may produce evidence for the circuit court's consideration relevant to the issues certified by the Court of Appeals.

Every petitioner filing a petition for a writ of actual innocence based on non-biological evidence bears the same burden of proof before the Court of Appeals. Each such petitioner must establish by clear and convincing evidence "all of the allegations contained in clauses (iv) through (viii) of subsection A of [Code] § 19.2-327.11." Code § 19.2-327.13.

The provisions of Code § 19.2-327.12 do not require that the Court of Appeals certify the same factual issues to the circuit court in every case. As stated above, the statute grants the Court of Appeals broad discretion in determining which issues, if any, require further development of the facts in a hearing before a circuit court.

We hold that the Court of Appeals did not abuse its discretion in issuing a referral order in the present case that did not mirror the referral order entered in Carpitcher. Although both cases involved recantation evidence, the present case concerned the recantation of a co-defendant, while Carpitcher involved a recantation by the victim of the crimes. The issues certified by the Court of Appeals in each case were

12

relevant to the matters at issue in the respective petitions before that Court.[3]

For these reasons, we hold that the Court of Appeals did not err in concluding that Johnson failed to meet his statutory burden of proof and in dismissing Johnson's petition for a writ of actual innocence based on non-biological evidence. Accordingly, we will affirm the Court of Appeals' judgment.

<u>Affirmed.</u>

---

[3] In view of our holding, we do not address the Commonwealth's remaining arguments.