PRESENT: Hassell, C.J., Lacy, Keenan, Lemons, Koontz, and Agee, JJ., and Stephenson, S.J.

ALECK J. CARPITCHER

v. Record No. 060638  OPINION BY JUSTICE BARBARA MILANO KEENAN
                                            March 2, 2007
COMMONWEALTH OF VIRGINIA


                 FROM THE COURT OF APPEALS OF VIRGINIA

     This appeal arises from the Court of Appeals' dismissal of

a petition for a writ of actual innocence based on non-

biological evidence, in which a petitioner sought relief based

on recantation evidence provided by the victim of the crimes who

had given contrary testimony at the petitioner's trial.  We

primarily consider whether the Court of Appeals correctly

applied the statutory provisions governing such petitions, Code

§§ 19.2-327.10 through -327.14.

     In August 1999, Aleck Jacob Carpitcher was convicted by a

jury in the Circuit Court of Roanoke County (circuit court) of

aggravated sexual battery, in violation of Code § 18.2-

67.3(A)(1), of taking indecent liberties with a minor, in

violation of Code § 18.2-370.3, and of three counts of animate

object sexual penetration, in violation of Code § 18.2-67.2.

The circuit court sentenced Carpitcher to a total of 73 years'

imprisonment, with 35 years of that total sentence suspended.[1]

---

[1] The circuit court also suspended the $20,000 fine fixed by
the jury.

1

The alleged victim of these offenses was H.L., who was ten years old at the time of the charged offenses and was the Commonwealth's primary witness at Carpitcher's trial.[2] H.L. testified at the trial that between January and May 1998, Carpitcher asked her on one occasion to touch his penis, removed her underwear and inserted his finger into her vagina on three occasions, and routinely grabbed her vagina or buttocks when he was alone with her in her mother's bedroom. H.L. admitted that she did not like Carpitcher and that she was jealous of his relationship with her mother. H.L. further testified that she did not tell her mother about Carpitcher's actions because she was afraid that Carpitcher would hurt H.L. or her mother.

Following his conviction, Carpitcher filed a petition for appeal in the Court of Appeals, which refused the petition in an unpublished memorandum opinion on the ground that H.L.'s testimony was not inherently incredible. Carpitcher v. Commonwealth, Record No. 2104-99-3 (February 22, 2000). This Court also refused Carpitcher's petition for appeal. Carpitcher v. Commonwealth, Record No. 001281 (November 7, 2000).

In March 2000, in conversations with her mother and her therapist, H.L. recanted her testimony that Carpitcher had committed the various acts she described at trial. In April

---

[2] Because this case involves sexual abuse of a minor, we refer to the victim by pseudonym.

2000, H.L. wrote a letter to Governor James S. Gilmore, III, stating that she had falsely accused Carpitcher and requesting that he be released from prison.

Also in April 2000, in an interview with Carpitcher's attorney, H.L. again recanted her trial testimony, claiming that Carpitcher never touched her. However, she maintained that he once asked her to touch his penis. H.L. also stated that her mother told her that unless H.L. "[told] the truth" and recanted her testimony, she would be forced to live with her father against her wishes.

In October 2000, H.L. wrote a statement in which she claimed that her trial testimony was not true, that Carpitcher never touched her, and that she accused him of sexually abusing her because she was jealous of his relationship with her mother and she wanted to make him "go away." On another occasion, H.L. recanted her trial testimony in a sworn statement.

In November 2004, Carpitcher filed in the Court of Appeals a petition for a writ of actual innocence based on non-biological evidence under Code §§ 19.2-327.10 through -327.14. He alleged that upon consideration of H.L.'s recantation, no rational trier of fact could have found him guilty of the crimes for which he was convicted. The Commonwealth responded by filing a motion to dismiss, arguing that H.L.'s recantation was

3

the product of duress and was otherwise insufficient to support an award of a writ of actual innocence.

The Court of Appeals determined that additional evidence was necessary and accordingly certified the following issues to the circuit court for hearing:

> (1) Whether the victim in this case has recanted the testimony she gave at trial in any material way with regard to the culpability of the petitioner and (2) if such material recantation of her trial testimony has taken place, whether or not such recantation is the product of duress, undue influence or inappropriate pressure from others.

The circuit court conducted a hearing on the issues certified by the Court of Appeals. H.L., who was 17 years old at the time of the hearing, testified that her testimony at Carpitcher's criminal trial was false and that Carpitcher had never touched her or made any sexual advances toward her.

In its findings of fact certified to the Court of Appeals, the circuit court concluded that H.L. was no longer a credible witness because she had testified inconsistently about the same issues on three separate occasions.[3] The circuit court was unable to determine which version of H.L.'s testimony was true. The circuit court further found that H.L. was "threatened, intimidated, and coerced to comply with the subtle and not so

---

[3] In addition to her testimony in Carpitcher's trial and her testimony at the hearing on Carpitcher's petition for a writ of actual innocence, H.L. also testified in a hearing pursuant to Carpitcher's unsuccessful habeas corpus petition. See Carpitcher v. Warden, Record No. 032922 (April 19, 2004).

4

subtle, demands that she change her trial testimony." As a result, the circuit court could not determine whether H.L.'s recantation was true.

Carpitcher filed a brief in the Court of Appeals objecting to the circuit court's certified findings of fact, and filed a motion seeking leave to file an additional brief. The Court of Appeals denied Carpitcher's motion to submit an additional brief, concluding that the record provided an adequate basis on which to resolve the merits of the case.

The Court of Appeals held that H.L.'s recantation would be "material," within the meaning of Code § 19.2-327.11(A)(vii), only if Carpitcher proved by clear and convincing evidence either that H.L.'s recantation was "true" or that her testimony at trial was perjured. In determining that Carpitcher failed to meet this burden of proof, the Court of Appeals gave "great weight" to the circuit court's finding that because H.L. was not a credible witness, the circuit court could not determine which version of H.L.'s testimony was truthful. The Court of Appeals also found that H.L.'s trial testimony was not perjured, and noted that there was "additional evidence, discovered post-trial, that tend[ed] to corroborate H.L.'s trial testimony."

Following its review of the record, the Court of Appeals dismissed Carpitcher's petition. Carpitcher filed a petition requesting rehearing or rehearing en banc, which the Court of

Appeals denied.  In re: Carpitcher, Record No. 2755-04-03 (March 1, 2006).  Carpitcher appeals.

In reviewing the Court of Appeals' judgment, we first observe that the Court of Appeals considers petitions for a writ of actual innocence based on non-biological evidence under its original, rather than its appellate, jurisdiction.  See Code § 19.2-327.10.  Upon consideration of such a petition and the supporting materials permitted by Code §§ 19.2-327.10 through – 321.13, the Court of Appeals may 1) dismiss the petition for reasons of evidentiary insufficiency, 2) grant the writ and vacate the conviction upon clear and convincing evidence satisfying the designated statutory requirements, or 3) find the petitioner guilty of a lesser included offense and remand the case to the circuit court for resentencing.  Code § 19.2-327.13.

This is the first occasion we have had to state the standard of review we will apply in this Court to an appeal of a final judgment of the Court of Appeals disposing of a petition for a writ of actual innocence based on non-biological evidence.  The judgment before us in this appeal is based partly on factual findings certified by the circuit court in response to the Court of Appeals' order referring certain factual issues pursuant to Code § 19.2-327.12.  Such factual findings are similar to circuit court findings made under Code § 8.01-654(C) in habeas corpus cases in which we have original jurisdiction and have

6

referred factual issues to the circuit court for an evidentiary hearing. Therefore, we will apply to the factual findings contained in the record of the Court of Appeals a standard of review similar to the standard we apply to factual findings entered in our original jurisdiction habeas corpus proceedings. We will be bound by the factual findings in the present record, as approved by the Court of Appeals, unless they are plainly wrong or without evidence to support them. See Yarbrough v. Warden, 269 Va. 184, 195, 609 S.E.2d 30, 36 (2005); Lovitt v. Warden, 266 Va. 216, 229, 585 S.E.2d 801, 808 (2003), cert. denied, 541 U.S. 1006 (2004); Hedrick v. Warden, 264 Va. 486, 496, 570 S.E.2d 840, 847 (2002).

We apply a different standard of review, however, to the Court of Appeals' conclusions of law and its conclusions based on mixed questions of law and fact. Such conclusions, in accordance with general principles of appellate review, are subject to our de novo consideration. See Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 662-63, 636 S.E.2d 408, 411 (2006); Collins v. First Union Nat'l Bank, 272 Va. 744, 749, 636 S.E.2d 442, 446 (2006); Yarbrough, 269 Va. at 195, 609 S.E.2d at 36, Lovitt, 266 Va. at 229, 585 S.E.2d at 808.

Carpitcher argues that the Court of Appeals erred in requiring him to prove either that H.L.'s recantation was "true" or that her trial testimony was false. Carpitcher asserts that

7

Code §§ 19.2-327.10 through -327.14 do not place this rigorous burden on a petitioner, but merely require that the new evidence be material and such that no rational trier of fact considering the evidence could have found the petitioner guilty. Carpitcher asserts that he has satisfied this statutory requirement because the circuit court could not determine which version of H.L.'s testimony was true and, thus, no rational trier of fact could have found Carpitcher guilty beyond a reasonable doubt. We disagree with Carpitcher's arguments.

To obtain a writ of actual innocence under the provisions of Code §§ 19.2-327.10 through -327.14, a petitioner must allege and prove, among other things, that the newly-discovered evidence

(1) "was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court;" Code § 19.2-327.11(A)(iv);

(2) "is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction by the court;" Code § 19.2-327.11(A)(vi);

(3) "is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt;" Code § 19.2-327.11(A)(vii); and

(4) "is not merely cumulative, corroborative or collateral." Code § 19.2-327.11(A)(viii).

8

The petitioner bears the burden of proving these four elements by clear and convincing evidence.  Code § 19.2-327.13.

The third element listed above, the "materiality requirement," is the only element of proof at issue in this appeal.  The term "material" can have many different meanings, depending on the context in which the word is used.  For example, when the admissibility of evidence is at issue, the term "material" means that the evidence tends to prove a matter that is properly at issue in the case.  Brugh v. Jones, 265 Va. 136, 139, 574 S.E.2d 282, 284 (2003).

In contrast, when considering whether evidence in a criminal prosecution was subject to disclosure as being exculpatory under the holding in Brady v. Maryland, 373 U.S. 83 (1963), the term "material" refers to evidence that would have created a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985); Workman v. Commonwealth, 272 Va. 633, 664, 636 S.E.2d 368, 374 (2006).  Other different meanings of the term "material" further illustrate this point. See e.g., Orndorff v. Commonwealth, 271 Va. 486, 504, 628 S.E.2d 344, 354 (2006) (in motion for new trial evidence is "material" if it " 'ought to produce opposite results on the merits' at another trial") (quoting Lewis v. Commonwealth, 209 Va. 602, 608-09, 166 S.E.2d

248, 253 (1969)); Stottlemyer v. Ghramm, 268 Va. 7, 12, 597 S.E.2d 191, 193 (2004) (matter is "material" such that witness may be impeached if " 'cross-examining party would be entitled to prove it in support of his case' ") (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 786 (1918)); Montgomery Mut. Ins. Co. v. Riddle, 266 Va. 539, 543, 587 S.E.2d 513, 515 (2003) (matter is "material" to insurance policy under Code § 38.2-309 if matter is "of such a nature that knowledge of the item would affect a person's decision-making process"); Holz v. Commonwealth, 220 Va. 876, 881, 263 S.E.2d 426, 429 (1980) (perjured testimony is "material" if it is relevant to main issue at trial or collateral issue).

In considering the term "material" in the present context of Code § 19.2-327.11, we must determine and give effect to the intent of the legislature. Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006); Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003); Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). We consider the words the legislature has employed, the subject matter of the statutes governing writs of actual innocence based on non-biological evidence, the statutes' apparent object, and the legislative purpose in enacting the statutes. See Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003); Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869

10

(2002); Lucy v. County of Albemarle, 258 Va. 118, 129-30, 516 S.E.2d 480, 485 (1999); Mapp v. Holland, 138 Va. 519, 527-28, 122 S.E. 430, 432-33 (1924).

We also examine the words of the particular statute at issue, Code § 19.2-327.11, in its entirety rather than by isolating particular words or phrases. Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001); Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999). Our application of these principles renders Code § 19.2-327.11 harmonious with its legislative purpose and avoids any construction defeating that purpose. Esteban, 266 Va. at 609, 587 S.E.2d at 526; Lucy, 258 Va. at 130, 516 S.E.2d at 485; Mapp, 138 Va. at 528, 122 S.E. at 433.

The statutory provisions at issue reflect an obvious legislative purpose. By enacting these provisions, the General Assembly intended to provide relief only to those individuals who can establish that they did not, as a matter of fact, commit the crimes for which they were convicted. The statutes governing writs of actual innocence based on non-biological evidence considered as a whole, and Code § 19.2-327.11 in particular, were not intended to provide relief to individuals who merely produce evidence contrary to the evidence presented at their criminal trial.

With this legislative purpose in mind, we hold that to be "material," within the meaning of Code § 19.2-327.11(A)(vii), evidence supporting a petition for a writ of actual innocence based on non-biological evidence must be true. Manifestly, evidence that is false cannot be "material" under the terms of the statute.

The type of evidence at issue here, recantation evidence, plainly illustrates the necessity of this particular construction of the statute. If we were to permit evidence that may not be true to support a writ of actual innocence, we would be required to grant every petition seeking relief from a conviction when a trial witness, whose testimony was essential to establishing one or more elements of a crime, has completely recanted her trial testimony. Such a construction of the statute would defeat the legislative intent of restricting relief only to those individuals who can establish that they did not commit the crime for which they have been convicted.

We therefore turn to consider whether the Court of Appeals erred in holding that Carpitcher failed to meet his burden of proof under the statute. We observe that recantation evidence is generally questionable in character and is widely viewed by courts with suspicion because of the obvious opportunities and temptations for fraud. Fout v. Commonwealth, 199 Va. 184, 192, 98 S.E.2d 817, 823 (1957); Lewis v. Commonwealth, 193 Va. 612,

12

625, 70 S.E.2d 293, 301 (1952); United States v. Johnson, 487 F.2d 1278, 1279 (4th Cir. 1973) (per curiam); cf. United States v. Bynum, 3 F.3d 769, 773 (4th Cir. 1993).

Unless proven true, recantation evidence merely amounts to an attack on a witness' credibility by the witness herself. See Odum v. Commonwealth, 225 Va. 123, 131, 301 S.E.2d 145, 149 (1983); Lewis, 193 Va. at 626, 70 S.E.2d at 302. As we stated in Lewis, in approving a circuit court's denial of a motion for a new trial based on recantation evidence, "while we know from [her] lips that this witness spoke falsely on one occasion, this does not establish that [her] testimony at the trial was false and the [later] statements . . . were true." 193 Va. at 626, 70 S.E.2d at 302.

Here, the circuit court was unable to determine whether H.L.'s recantation was true, and concluded that she was "threatened, intimidated and coerced" to change her trial testimony. Relying on the circuit court's findings of fact, the Court of Appeals held that Carpitcher did not meet his burden of proving that the recantation testimony was true.

We conclude that the Court of Appeals did not err in holding that Carpitcher was required, and failed, to prove that H.L.'s recantation was true. On the present record, H.L.'s recantation testimony did no more than establish that she spoke falsely on one or more occasions. Therefore, we hold that

13

H.L.'s recantation testimony was not "material" to the issue of actual innocence, within the meaning of Code § 19.2-327.11(A)(vii).

We decline to engage in the additional analysis conducted by the Court of Appeals addressing the related question whether H.L. committed perjury at Carpitcher's criminal trial. We hold that such analysis is not part of the "materiality" inquiry under Code § 19.2-327.11(A)(vii), which focuses on the truth of the evidence presented in support of the petition for a writ of actual innocence based on non-biological evidence.

Carpitcher argues, nevertheless, that because the Court of Appeals and the circuit court could not determine which, if any, version of H.L.'s testimony was true, Carpitcher met his burden of proving that he is entitled to relief because "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" on the current record. Code § 19.2-327.11(A)(vii). We disagree.

The requirements of Code § 19.2-327.11(A)(vii) are stated in the conjunctive, requiring proof that "the previously unknown or unavailable evidence is material and when considered with all of the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. (emphasis added). Therefore, to meet this statutory burden, Carpitcher was required to prove both

14

that the recantation evidence was true and that, when considered with all the other evidence in the current record, no rational trier of fact could have found him guilty of the crimes. Because Carpitcher failed to meet his burden of establishing the first component of this two-part statutory burden, he failed to satisfy his burden of proof under the statute.

Carpitcher also argues that the Court of Appeals erred in relying on additional evidence that was not in the record at his criminal trial as a basis for the Court's dismissal of Carpitcher's petition. We do not reach the merits of this argument because the Court of Appeals did not rely on the additional evidence in reaching its conclusion that Carpitcher did not meet his burden of establishing that H.L.'s recantation was true. The Court of Appeals referenced this additional evidence only in its analysis whether H.L.'s trial testimony was perjured, which we have held is not part of the "materiality" analysis under Code § 19.2-327(A)(vii).

Carpitcher next argues that the Court of Appeals denied him procedural due process in refusing to permit him to file an additional brief challenging the circuit court's certified findings of fact. Carpitcher asserts that although he did not have a statutory right to file a brief challenging the circuit court's factual findings, he had a due process right to do so because the circuit court's factual findings were a crucial

15

factor in the Court of Appeals' consideration of his case.  We disagree with Carpitcher's arguments.

The constitutional guarantee of procedural due process affords a litigant the right to reasonable notice and a meaningful opportunity to be heard.  Willis v. Mullett, 263 Va. 653, 659, 561 S.E.2d 705, 709 (2002); Etheridge v. Medical Ctr. Hosps., 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989); Parratt v. Taylor, 451 U.S. 527, 540 (1981).  Under Code § 19.2-327.12, the Court of Appeals may order the circuit court in which the order of conviction was entered to conduct a hearing on any issues that the Court of Appeals determines require further development of the facts.  After conducting an evidentiary hearing, the circuit court is required to make certified findings of fact and submit them to the Court of Appeals.  Id.

We consider the provisions of this statute in the larger framework of Code §§ 19.2-327.10 through -327.14.  Pursuant to these statutes, the Court of Appeals is the court of original jurisdiction for consideration of petitions for a writ of actual innocence.  Although the General Assembly has not afforded petitioners filing such claims a statutory right to contest the circuit court's factual findings in the Court of Appeals before the Court of Appeals enters judgment in the case, the guarantee of procedural due process is nevertheless satisfied under the statutory scheme because a petitioner may request a rehearing by

16

the panel rendering judgment on the petition, or a rehearing en banc, challenging the Court of Appeals' application of the circuit court's factual findings.[4]  In addition, the circuit court's factual findings may be challenged on appeal to this Court, affording a petitioner another meaningful opportunity to be heard on the issue whether those findings are plainly wrong or without evidentiary support.

Although the procedural due process guarantee does not afford a petitioner the right to file pre-judgment briefing in the Court of Appeals challenging a circuit court's factual findings, the Court of Appeals may exercise its discretion to permit additional briefing of this nature.  In the present case, the Court of Appeals did not abuse its discretion by refusing Carpitcher's request to file additional pre-judgment briefing because the circuit court's findings were evaluative in nature, addressing H.L.'s veracity and whether her recantation testimony was the product of duress.  Any briefing challenging these evaluations would have been unlikely to have provided analysis of substantive benefit to the Court.

For these reasons, we hold that the Court of Appeals did not err in concluding that Carpitcher failed to meet his statutory burden of proof and in dismissing Carpitcher's

---

[4] See Rules 5A:33A and 5A:34A. In fact, as stated above, Carpitcher filed a petition for rehearing or rehearing en banc in the Court of Appeals.

petition for a writ of actual innocence.  Accordingly, we will affirm the Court of Appeals' judgment.

<u>Affirmed.</u>
