ELDER, J.,
concurring in part, dissenting in part, and dissenting from the judgment.
I concur in Parts I and 11(A) of Judge Powell’s opinion. However, I believe applying the proper standard of review,[44] *455 as set out in Part 11(A), to the facts in this case compels the granting of the petition for a writ of actual innocence. Thus, for the reasons stated below, I respectfully dissent from the remainder of the opinion.
The foregoing opinions dismissing the petition for a writ provide a lengthy recitation of facts and many paragraphs of heart-wrenching, emotional narrative. There is no denying that this case involves a horrible crime that has had an unimaginable impact on the victim’s family. However, that is not what this petition for actual innocence concerns. We are not charged with determining whether Dustin Turner is without moral fault. He is not. We are not charged with determining whether he reacted in a morally or legally proper way when Billy Joe Brown ended Jennifer Evans’ life. He did not. Instead, we are charged with applying the existing legal framework to determine if Turner is “actually] innocen[t]” of the murder and abduction for which he was previously convicted. I believe the record before us compels the conclusion that he is.[45]
*456 In the previous panel majority, I discussed at length the detailed legal rationale for the panel’s decision—a rationale I continue to follow and explain more fully in the pages below. This case has taken many twists and turns and involves a complex record of conflicting evidence. However, we instruct jurors they are entitled to use their common sense. I suggest the fact that we normally write in great detail—with many citations to legal authority—does not negate the fact that we, too, should apply a commonsense approach. There is no denying that this petition is of a most serious nature. Having said that, and no matter how many novel legal theories we apply to this case, the issue before us is really quite simple.
First, a clear majority of this Court agrees on the proper standard of review, as enunciated in Carpitcher v. Commonwealth, 273 Va. 335, 641 S.E.2d 486 (2007). A panel of this Court referred this matter to the circuit court for fact finding pursuant to Code § 19.2-327.12, and we are bound by that decision. The Supreme Court of Virginia could not have been clearer in setting out the relevant legal principles in Carpitcher and Johnson v. Commonwealth, 273 Va. 315, 322, 641 S.E.2d 480, 484 (2007) (giving “the Court of Appeals broad discretion to certify to the circuit court issues of fact that must be resolved before deciding the merits of a petition” (emphasis added)).
Second, the circuit court found that “Brown [was] credible in his assertion that he acted independently in murdering the victim and that Turner had no role in the murder or any restraint of the victim.” Because the referring panel determined that Brown’s recantation was material to Turner’s petition for a writ of actual innocence and, therefore, that referral to the circuit court was required, we must accept the circuit court’s findings of fact in that regard unless plainly wrong. See Carpitcher, 273 Va. at 342-43, 641 S.E.2d at 490 (binding this Court “by the factual findings in the present record ... unless they are plainly wrong or without evidence *457 to support them”). Much is made of the contention that “credibility” and “truth” are not necessarily the same. While this is an accurate assessment of reality, our judicial system has always been based on credibility findings made by the trier of fact. I am aware of no legal concept that allows an appellate court, even one acting on a matter over which it has original jurisdiction, to ignore a credibility finding because it might not be “the truth,” unless the record meets the higher burden of establishing that credibility finding is plainly wrong. Although the search for real truth is elusive, it is abundantly clear in this case that the trier of fact credited Brown’s testimony that he alone restrained and killed the victim with no participation from Turner.
Third, the question then becomes whether any rational fact finder could convict Turner of the victim’s murder and abduction when told it had to accept the above finding as credible— that is, that the fact finder was required to believe Brown’s most recent testimony. The answer to that question is obvious: If X says that he did it and that Y did not participate in any way, and the jury believes X, there is no legal way to convict Y. A rational fact finder simply cannot apply any interpretation to the remaining circumstantial evidence that will allow it to find Y guilty in light of this direct credible evidence.
Because Brown’s credible recantation prevents a finding that Turner participated directly in Evans’ murder, the majority applies a novel theory of abduction by deception in order to manufacture the intent to defile, a required element a rational fact finder would need to find Turner guilty of felony murder. However, the record is devoid of any evidence that Turner ever engaged or intended to engage in any sexual activity against the will of the participant. Turner’s mere desire to engage in sexual activity with Evans cannot serve as the basis for concluding he would have used force if she did not consent. Applying the theory of abduction by deception in this fashion lends itself to abuse.
*458 Dustin Turner deserves no accolades for his behavior on the terrible night of the victim’s death, but based on the circuit court’s findings regarding Brown’s credibility in the context of the entire record, the evidence proves Turner did not restrain or murder the victim. He has been incarcerated for fourteen years for a crime the fact finder has found he did not commit. The petition should be granted.
TURNER’S PARTICIPATION IN THE CRIMES
My disagreement with the majority stems from its holding that “a rational fact finder could have found that Turner!, acting with intent to defile,] abducted Evans by deception— meaning no finding of force or restraint would have been required—and that the abduction ended with Evans’ murder.” The majority first errs by not considering, in light of Brown’s credible recantation, whether Brown acted alone in killing Evans. While the majority properly recognizes that we must “reject! ] all evidence that is in conflict with the circuit court’s findings,” I believe Brown’s recantation has a more far-reaching impact on the circumstantial evidence relevant to demonstrating Turner’s intent than the majority acknowledges. I would conclude Brown’s testimony on referral compels us to reject any evidence that suggests Brown and Turner acted in concert to engage in sexual intercourse with Evans against her will. Second, and central to my dissent, I believe no rational fact finder could find Turner guilty of abduction with intent to defile and felony murder based on the remaining circumstantial evidence contained in the record.
Where two or more parties engage in criminal concert of action, one who participates in the initial felony giving rise to the homicide may be found guilty of murder whether or not he was the one who actually dealt the killing stroke. See Rollston v. Commonwealth, 11 Va.App. 535, 543, 399 S.E.2d 823, 828 (1991) (recognizing the application of concert of action in felony murder cases); see also Wooden v. Commonwealth, 222 Va. 758, 762, 284 S.E.2d 811, 814 (1981); Berkeley v. Commonwealth, 19 Va.App. 279, 286-87, 451 S.E.2d 41, 45 (1994) (holding that the victim’s death resulted from her abduction so *459 that the defendant’s participation in the continuing transaction provided sufficient evidence to affirm his conviction of first-degree murder). “Concerted action is defined as ‘[ajction that has been planned, arranged, adjusted, agreed on and settled between parties acting together pursuant to some design or scheme.’” Rollston, 11 Va.App. at 542, 399 S.E.2d at 827 (quoting Black’s Law Dictionary 262 (5th ed.1979)).
“[W]hen the homicide is within the res gestae of the initial felony and is an emanation thereof, it is committed in the perpetration of that felony.” King v. Commonwealth, 6 Va. App. 351, 354, 368 S.E.2d 704, 705 (1988). Our courts have interpreted this concept to prohibit application of the felony-murder doctrine where the killing merely coincided with the underlying felony and was not a consequence thereof.[46] See id. at 356, 368 S.E.2d at 707 (citing Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472, 476 (1958)); see also Griffin v. Commonwealth, 33 Va.App. 413, 425, 533 S.E.2d 653, 659 (2000) (requiring evidence that the killing “resulted from an act which was an integral part of the felony or an act in direct furtherance of or necessitated by the felony” (emphases added)).
As a result of Turner’s petition for a writ of actual innocence, this Court ordered the circuit court to make factual findings on four questions, only one of which related directly to the specific offenses for which Turner had been convicted, murder and abduction with intent to defile: “4) [I]s Brown credible in his assertion that he acted independently in murdering the victim and that Turner had no role in the murder or any restraint of the victim?” (Emphasis added). In response to that question, the circuit court determined Brown *460 was “credible in his assertion that he acted independently in murdering the victim and that ... Turner played no role in the murder or in the restraining of the victim.” (Emphasis added). By assuming Brown’s recantation “has no bearing on what a reasonable fact finder could conclude about Turner’s ... sexual intent,” the majority does not view both the question and the answer in the context of the convictions Turner challenges—for murder and abduction with intent to defile.
The circuit court, by referring to the murder and the restraint in the disjunctive, contemplated Brown’s recantation in light of both the actual killing and the underlying crime of abduction. “Restrain” means “‘[t]o control’” or “‘[t]o take away freedom or liberty of.’ ” United States v. Stokley, 881 F.2d 114, 116 (4th Cir.1989) (quoting Webster’s Second New Riverside University Dictionary (1984)); see also Black’s Law Dictionary 1340 (8th ed.2004) (defining “restraint” as “[c]onfinement,” “limitation,” or “[prohibition of action”). The legislature has provided that abduction as defined in Code § 18.2-47 is synonymous with kidnapping, see Code § 18.2-47(C), which is not separately defined in the Virginia Code. At common law, kidnapping required proof of both “an unlawful restraint” and an asportation. See State v. Dix, 282 N.C. 490, 193 S.E.2d 897, 899 (1973).
Relying on Jerman v. Dir. of the Dep’t of Corr., 267 Va. 432, 593 S.E.2d 255 (2004), and Kent v. Commonwealth, 165 Va. 840,183 S.E. 177 (1936), the majority concludes “[t]he accused need not have used any physical force or restraint against the victim” in order to uphold a conviction for abduction. (Emphasis added). Although our legislature, like many others, now permits a conviction for abduction upon proof of a detention without any asportation, see, e.g., Scott v. Commonwealth, 228 Va. 519, 526, 323 S.E.2d 572, 576 (1984), the statutory language provides no indication the legislature has removed the “restraint” requirement. To the contrary, one who “seizes, takes, transports, detains or secretes the person of another,” as those terms are used in Code § 18.2-47, “restrains” that person under the accepted legal definition of the term. The Supreme Court has recognized that a conviction for abduction *461 under Code § 18.2-47 requires proof of restraint of the victim either by asportation or detention and that the asportation or detention may be accomplished by force, intimidation, or deception. Jerman, 267 Va. at 439, 593 S.E.2d at 259; see John L. Costello, Virginia Criminal Law and Procedure § 5.1[6] (2009) (“[A]bduction consists of restraints on the personal liberty of another.” (Emphasis added)). Thus, an asportation by force or deception is a type of restraint[47] and, if the other statutory elements are proved, constitutes abduction in violation of Code § 18.2-47.
Based on the crimes for which Turner was convicted, the wording of the question posed by this Court to the circuit court, and the accepted “assum[ption] that trial judges have knowledge of the Commonwealth’s laws and properly apply those laws” absent clear evidence to the contrary, Wilson v. Commonwealth, 23 Va.App. 318, 326 477 S.E.2d 7, 10 (1996), I would hold the circuit court’s use of the word “restraint” constitutes a finding that Turner did not participate with Brown in an abduction by either force or deception. I would therefore reject the theory that Turner and Brown engaged in any criminal concert of action such that any rational fact finder could believe any causal connection existed between Turner’s conduct and Evans’ death.
*462 In light of the circuit court’s acceptance of Brown’s testimony that Turner did not participate in the murder or the abduction leading to the murder, the hypothetical fact finder must necessarily reject any evidence or interpretation thereof that suggests an agreement between Turner and Brown existed to undertake these acts.[48] Specifically, I would reject the majority’s conclusion that Fitzgibbons’ testimony, heavily relied upon by the majority, implies a formulated plan between Turner and Brown to engage in group sex with Evans against her will. A plain reading of the record compels such a rejection. At approximately 1:15 a.m., Turner made arrangements with Kate Bishop to take Brown home if Turner did not return to the club in time to do so himself. Then, at approximately 1:30 a.m., Turner spoke to Fitzgibbons and indicated that he, Brown, and Evans were going to have a “threesome.” The majority posits that “[fjifteen minutes would have been more than enough time for their plan [to have sex with Evans] to have changed[,]” but it inexplicably ignores the fact that at approximately 1:45 a.m., Bishop approached Brown to take him home. According to Bishop’s testimony, Brown refused to accompany her because he did not want to wait for Bishop’s friend to arrive and not because he had alternate plans with Turner to engage in sexual intercourse with Evans. It is a stretch of the imagination to believe a rational fact finder could conclude Turner made arrangements to have sex with Evans without Brown, changed the plans to include Brown in the sexual activity, changed his mind again to have Brown ride home with Bishop, and finally returned to the original plan of engaging in a threesome, all in the span of thirty minutes. Under the same logic, we cannot interpret Brown’s salacious request to “get[] it on with [Evans] too” as evidence of a nefarious agreement between him and Turner. No rational *463 fact finder could infer from this evidence that an agreement between Turner and Brown existed to engage in a threesome with Evans against her will.
In the absence of such an agreement, no rational trier of fact could find the men acted in concert to abduct or kill Evans. Because the two men each acted of their own volition, Turner’s conduct and Brown’s entry into the vehicle and subsequent killing were not “interdependent objects of a common criminal design.” Edmonds v. Commonwealth, 229 Va. 303, 310, 329 S.E.2d 807, 813 (1985). Indeed, Turner’s waiting with Evans in his vehicle merely accounted for his “presence at the location of the [murder], and nothing directly related to the commission of the felony that caused the [murder].” King, 6 Va.App. at 358, 368 S.E.2d at 708 (finding no causal connection between flying a plane containing marijuana as part of a drug smuggling operation and the death of a co-felon caused by crashing the plane into a mountain); see Rollston, 11 Va.App. at 542, 399 S.E.2d at 827 (“Mere presence during the commission of a crime is not sufficient to render one criminally liable.”). Whatever intentions Turner possessed when he left the club with Evans, the circuit court’s findings on referral compel the conclusion that he did not act in concert with Brown to lure her into leaving the club for the purpose of engaging in sexual intercourse against her will. Those findings instead compel the conclusion that Brown acted as an independent and superseding force so that his actions constituted a separate—and completely coincidental—enterprise with no causal connection to Turner’s own conduct.
Not only has Brown’s recantation severed Turner from the criminal enterprise leading to Evans’ murder, but, in light of the circuit court’s acceptance of Brown’s recantation, I believe a rational trier of fact could not have concluded beyond a reasonable doubt that Turner abducted Evans with intent to defile prior to and separate from Brown’s acts of restraint and murder. The majority takes the opposite view that “a rational fact finder could have found that Turner abducted Evans by deception.” It is at this critical juncture where the majority *464 premises its dismissal of Turner’s petition for a writ of actual innocence and where the heart of my dissent lies.
Under Code § 18.2-47, abduction requires proof of an asportation or detention. See Scott, 228 Va. at 526, 323 S.E.2d at 576. The accused need not have used any actual force against the victim in order to sustain a conviction. Kent, 165 Va. at 841-42, 183 S.E. at 177-78. Instead, restraint for purposes of abduction includes a taking away or detention induced by fraud or deception. See Code § 18.2-47; Jerman, 267 Va. at 439, 593 S.E.2d at 259; Kent, 165 Va. at 841-42, 183 S.E. at 177-78; Costello, supra, § 5.1[6]. However, the evidence must show that the accused effected such deception with the specific intent to defile the victim. See Johnson v. Commonwealth (Johnson II), 221 Va. 872, 879, 275 S.E.2d 592, 597 (1981); see also Simms v. Commonwealth, 2 Va.App. 614, 617, 346 S.E.2d 734, 735 (1986) (equating “defile” with “sexually molest”). This intent-to-defile element requires proof of an intent to engage in sexual contact against the will of the claimed victim. See, e.g., Code §§ 18.2-61 (rape), 18.2-67.1 (forcible sodomy), 18.2-67.3 (aggravated sexual battery), 18.2-67.4 (sexual battery).
“ ‘Intent is the purpose formed in a person’s mind which may, and often must, be inferred from the facts and circumstances in a particular case.’ ” Hughes v. Commonwealth, 18 Va.App. 510, 519, 446 S.E.2d 451, 457 (1994) (quoting David v. Commonwealth, 2 Va.App. 1, 3, 340 S.E.2d 576, 577 (1986)). The state of mind of an accused may be shown by his conduct and by his statements. Long v. Commonwealth, 8 Va.App. 194, 198, 379 S.E.2d 473, 476 (1989). “Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided [the evidence as a whole] is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.” Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). In its role of judging witness credibility, the fact finder is entitled to disbelieve, in whole or in part, the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. Speight v. Commonwealth, 4 Va.App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc). *465 The rejection of that testimony, however, does not provide substantive evidence that the opposite is true. Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001).
In both Kent and Jerman, the Court determined that the abductions occurred when the defendants told a specific lie that induced or coerced their respective victims into going places they would not otherwise have gone. In this case, by contrast, no rational fact finder could find beyond a reasonable doubt that Turner made any statement or engaged in any act showing an intent to deceive Evans for the purpose of sexually molesting her against her will. Although the evidence does not preclude the possibility that Turner had such an intent, reasonable hypotheses of innocence flow from the evidence, thereby precluding any rational trier of fact from finding Turner guilty beyond a reasonable doubt of abduction with intent to defile. To support its conclusion, the majority applies a novel theory of abduction by deception to manufacture the intent to defile that a rational fact finder would require to find Turner guilty of felony murder. In essence, the majority concludes that it is rational to find that any rude individual who desires sex also harbors an intent to defile.[49] The record contains neither legal authority nor factual support for such a conclusion.
In Johnson II, the Supreme Court of Virginia reversed the defendant’s conviction of abduction where his acts of restraint were “done in furtherance of his sexual advances and not with *466 the intent to deprive [the victim] of her personal liberty.”[50] 221 Va. at 879, 275 S.E.2d at 597. In that case, the defendant followed the victim into her kitchen after knocking on her door. He grabbed the victim from behind, attempted to kiss her, and rubbed his hips against her buttocks. When the victim’s landlady responded to her cries for help, the defendant released the victim and walked rapidly out of the apartment. The Court held that the defendant clearly “entered the apartment with the intention of having sexual intercourse with the [victim] and that the advances he made, however limited and fleeting, were designed to accomplish that purpose. However, his assault was frustrated by her resistance and stopped short of constituting an attempted rape.” Id. at 879, 275 S.E.2d at 596-97. On those facts, the evidence did not prove the defendant acted with the separate intent to deprive the victim of her personal liberty with the intent to defile.
Similarly here, the circumstantial evidence “fails ‘to form an unbroken chain which links [Turner] to the crime beyond a reasonable doubt,’ ” Hickson v. Commonwealth, 258 Va. 383, 388, 520 S.E.2d 643, 645 (1999) (quoting Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984)), because a rational trier of fact could find Turner acted with an intent to defile Evans, i.e., to engage in sexual contact against her will, only by “resorting to speculation and surmise,” Patterson v. Commonwealth, 215 Va. 698, 699, 213 S.E.2d 752, 753 (1975). Turner’s stated purpose for leaving the club with Evans was to wait with her in his vehicle for her friends Andria Burdette and Michelle McCammon to return. Although a rational fact finder could have rejected Turner’s testimony regarding his purpose, such a rejection does not support a finding that he acted instead with the requisite criminal intent to abduct Evans with an intent to defile. See Tarpley, 261 Va. at 256- *467 57, 542 S.E.2d at 764. Indeed, even if a rational fact finder could conclude Turner lied to Evans about his purpose in going with her to his car and that he actually hoped to have some form of sexual contact with her, the record contains no indication that Turner acted , with the intent to have that sexual contact by force if Evans had refused. The evidence provided by Andria Burdette, Michelle McCammon, and Turner himself indicating that Evans would have refused such advances does not bridge that gap in logic. Moreover, it defies rationality to suggest that displaying poor manners toward an individual’s friends and opening a door with “surprising force” could indicate an intent to defile. In fact, the record contains no evidence that Turner overbore Evans’ will at any point dining their encounter. Turner did not force Evans to stay behind; she willingly agreed to remain with him at the club and to meet her friends later that night. Turner did not make Evans uncomfortable; to the contrary, she appeared to have enjoyed his company. The evidence of the condition in which Evans’ body was found supports a finding that she had been sexually molested because her pants and underwear had been removed and her vest had been pushed up. However, Brown’s recantation, credited by the circuit court on referral, accounts for this because he fully admitted to defiling Evans’ body after he had killed her. In a similar vein, Turner’s callous behavior after Evans’ murder goes toward his guilt of being an accessory after the fact, a crime he conceded to have committed.
In sum, the majority makes a fatal leap in logic from Turner’s possible desire to engage in sexual intercourse to his alleged intent to defile Evans. In light of Brown’s recantation, the evidence proves beyond a reasonable doubt, at most, that when Turner invited Evans to wait with him in his vehicle for her friends, he did so with the hope of persuading her to have consensual sexual contact. The record is devoid of evidence supporting a rational finding that Turner acted with the intent to force Evans into having sex against her will. Brown’s recantation negates the inculpatory evidence against *468 Turner to such an extent that no rational trier of fact could have found Turner guilty beyond a reasonable doubt of abduction with intent to defile.
CONCLUSION
For these reasons, I would conclude Turner has met his burden of proving, by clear and convincing evidence, that Brown’s recantation is truthful and, consequently, that no rational trier of fact could have found proof beyond a reasonable doubt of abduction with intent to defile and felony murder. Code § 19.2-327.11(A)(vii). For the reasons stated in the panel majority opinion, I would further “accept Turner’s concession that he is guilty of being an accessory after the fact.” Turner v. Commonwealth, 54 Va.App. 458, 491, 680 S.E.2d 312, 328 (2009). Accordingly, I would grant Turner’s petition for a writ of actual innocence and vacate his convictions for abduction with intent to defile and first-degree murder. I respectfully dissent.
Because the issues addressed herein are of first impression and potential litigants and members of the bar may benefit from the directives herein, we direct the Clerk to publish this order.
The Commonwealth shall recover of the petitioner the costs in this Court. The Attorney General shall recover of the petitioner his costs expended herein.
Costs due the Commonwealth by petitioner in Court of Appeals of Virginia:
Costs of transcripts, briefs, and appendices, pursuant to Court’s November 6, 2008 and December 16, 2008 orders
Attorney General’s cost:
Attorney’s fee $50.00

. The concurrence accuses the majority and my dissent of "con-flat[ing] our traditional appellate role with our role as the court having original jurisdiction in this case” because we refer to the "standard of review.” The concurrence reads too much into our use of traditional jurisprudential nomenclature. As the majority clearly explains, the "standard of review” in this case simply refers to the deference we must give to the credibility findings of the circuit court juxtaposed with the totality of the evidence in the record. See supra at 416-17 n. 12, 694 S.E.2d at 263-64 n. 12. The standard of review sets forth the *455 analytical framework within which we ”consider[] ... the petition, the response by the Commonwealth, previous records of the case ... and ... [the] findings certified from the circuit court pursuant to an order issued under this chapter” for the purpose of evaluating Turner’s petition for a writ of actual innocence. Code § 19.2-327.13.

. As the majority mentions, ”[w]e have received correspondence from the Commonwealth alleging that it has discovered evidence that would call into question the credibility of Brown’s recantation and tend to support a finding of Turner’s guilt.” See supra at 418-19 n. 15, 694 S.E.2d at 265 n. 15. The Commonwealth has not provided this information in the form of a sworn statement; these new allegations are wholly unverified and contain multiple levels of hearsay. This Court may not accept the alleged informant’s statements at face value without first obtaining the assurance of their credibility via formal fact-finding procedures pursuant to Code § 19.2-327.12, particularly in light of the alleged informant’s status as a previously convicted felon awaiting sentencing on four additional felonies. Furthermore, the Commonwealth does not allege "good cause” for extending the 60-day deadline imposed on it to file “any information pertinent to the petitioner’s guilt, including proffers of evidence outside the trial court record.” Rule 5A:5(b)(7). Given the absence of a request from the Commonwealth to take any action relative to these new allegations, this Court has chosen not to refer the matter to the circuit court for a credibility determina *456 tion. Accordingly, this alleged new information is not a part of the record and has no bearing on my dissent.

. The underlying crime used to support Turner’s conviction for felony murder is abduction with intent to defile. "Any person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty ... shall be guilty of ‘abduction.’ ” Code § 18.2-47. Code § 18.2-48 provides an enhanced penalty "for the abduction of any person with intent to defile such person.”

. Other states have incorporated such definitions into their statutes. See, e.g., State v. Wilcox, 254 Conn. 441, 758 A.2d 824, 838 (2000) (noting that Conn. Gen.Stat. § 53a-91 requires proof of restraint to support a conviction of abduction and defines " ‘restrain’ ... as ‘restricting a person’s movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty [either (1)] by moving him from one place to another [asportation], or [(2)] by confining him either in the place where the restriction commences or in a place to which he has been moved [detention], without consent’ ”); People v. Valero, 134 A.D.2d 635, 521 N.Y.S.2d 527, 528 (N.Y.App.Div. 1987) (holding an abduction is a "serious form of restraint" under New York law); Romero v. State, 34 S.W.3d 323, 325 (Tex.App.2000) (noting that under Tex. Pen.Code Ann. § 20.01 abduction requires proof of restraint, which means "to restrict a person’s movements without consent, so as to interfere substantially with her liberty, [(1)] by moving her from one place to another [asportation] or [ (2) ] by confining her [detention]”).

. As the circuit court noted, the evidence establishing Turner’s guilt was largely circumstantial. Brown did not testify at Turner’s trial and did not provide his false inculpatory testimony to the jury. All of the Commonwealth's eyewitness testimony confirmed that Evans was last seen with Turner on the night of her death, a fact Turner readily concedes. There are, however, no eyewitnesses—besides the two convicted men—-who identified the actual killer.

. The majority further suggests that because the jury at Turner's original trial was "instructed that abduction with the intent to defile could be accomplished by, inter alia, deception and could have found that Turner deceived Evans into leaving the bar,” and apparently so found, "it cannot be said that no rational trier of fact could have found Turner guilty beyond a reasonable doubt." In other words, the majority says that a rational trier of fact could have found the petitioner guilty because the original jury did. However, to say that a rational trier of fact could have found the petitioner guilty because the original jury did fails to take into consideration the new evidence found credible on referral and would mandate the dismissal of every petition for a writ of actual innocence.

. The defendant in Johnson II was charged with abduction with intent to defile, but the jury convicted him of abduction. 221 Va. at 873, 877, 275 S.E.2d at 593, 595. The Court clarified its ruling by stating that "the evidence did not support a finding that Johnson intended either to defile his victim or to deprive her of her personal liberty." Scott, 228 Va. at 525, 323 S.E.2d at 576 (footnote omitted).